Gray, Appellant, *v.* Nationwide Mutual
Insurance Company.

Argued September 14, 1965. Before ERVIN, P. J.,
WRIGHT, WATKINS, MONTGOMERY, JACOBS, and HOFF-
MAN, JJ. (FLOOD, J., absent).

*Milford J. Meyer,* with him *Charles H. Weidner,* and
*Meyer, Lasch, Hankin & Poul,* and *Stevens & Lee,* for
appellant.

*Michael Shekmar,* for appellee.

PER CURIAM, November 11, 1965:

The six judges who heard the argument of this appeal being equally divided in opinion, the order of the court below is affirmed.

WRIGHT, J., files an opinion supporting the affirmance of the order, in which MONTGOMERY, J., joins.

JACOBS, J., also files an opinion supporting the affirmance of the order.

HOFFMAN, J., files a dissenting opinion, in which ERVIN, P. J., and WATKINS, J., join.

OPINION BY WRIGHT, J.:

Robert A. Gray filed a complaint in assumpsit against Nationwide Mutual Insurance Company based on a purported assignment from Robert B. MacLatchie. A prior trespass action by Gray against MacLatchie had resulted in a $15,000.00 verdict. See *Gray v. MacLatchie*, 403 Pa. 595, 170 A. 2d 590. MacLatchie was insured by Nationwide against liability to the extent of $5,000.00, which amount Nationwide paid. In settlement of the balance, MacLatchie assigned to Gray his alleged right to recover from Nationwide for its failure to settle within the policy limit. The Court below dismissed Gray's complaint.

Breach of an insurer's obligation to act in good faith and with due care in representing the interests of the insured creates a cause of action in tort, not in assumpsit. A claim of the instant nature is not assignable before verdict: *Sensenig v. Pa. Railroad Co.*, 229 Pa. 168, 78 A. 91; *Seaboard Commercial Corp. v. Bardell*, 49 Pa. D. & C. 300. I also agree with President Judge ALESSANDRONI that the attempted assignment violates public policy because of its collusive nature and the opportunity for fraud. It is therefore proper to affirm the order of the court below.

MONTGOMERY, J., joins in this opinion.

OPINION BY JACOBS, J.:

I would affirm the order of the court below for the following reasons:

Any liability of the insurer over the $5,000 policy limit arises from the fiduciary relationship assumed by the insurer toward the insured. *Gedeon v. State Farm Mutual Automobile Insurance Company*, 410 Pa. 55, 188 A. 2d 320 (1963). "Claimant is a stranger to that relationship", as is pointed out by Professor Keeton in his comprehensive and scholarly article in 67 Harvard Law Review 1136 at 1176. The insurer owed no duty to this plaintiff (claimant). Therefore, no right of plaintiff has been affected which would allow plaintiff to recover directly from the insurer. I would not permit plaintiff to do indirectly by assignment what he cannot do directly.

As a practical matter, if only the insurer's bad faith prevented a settlement for $5,000., I fail to see how plaintiff was injured (except for the expense of trial) by the insurer's refusal to settle. Furthermore, to permit plaintiff to sue the insurer directly for the full amount of any judgment it holds against the insured, despite policy limits, gives the plaintiff an unfair bargaining weapon in settlement negotiations.

---

DISSENTING OPINION BY HOFFMAN, J.:

Appellant, Robert A. Gray, brought an action in assumpsit against appellee, Nationwide Mutual Insurance Company. Appellee's preliminary objections in the nature of a demurrer were sustained, and the complaint was dismissed.

This action stems from an earlier suit by appellant against one Robert B. MacLatchie. Appellant had been in an automobile accident and brought suit against MacLatchie, the driver of the other car. At the time

4

of the accident, MacLatchie was insured by appellee under an automobile liability policy which was limited to $5,000 for personal injury plus interest, costs and property damage. Appellee undertook to defend Mac-Latchie in this action in accordance with the provisions of the policy. Appellant obtained a verdict of $15,000; judgment was entered thereon and affirmed by the Supreme Court. *Gray v. MacLatchie,* 403 Pa. 595, 170 A. 2d 590 (1961).

Appellee paid its entire policy coverage, interest and costs on account of the judgment, leaving a balance of $9,763.33. Appellant demanded payment of this balance from MacLatchie who, thereupon, assigned to appellant all of his rights against appellee.

Appellant's complaint in the present case alleges that appellee violated the provisions of its policy and its legal obligations to MacLatchie by failing to act in good faith in the defense and disposition of the earlier suit and by refusing to settle the action within the policy limits. The possible liability of an insurer which undertakes the defense of its insured has been explained by our Supreme Court: ". . . [B]y asserting in the policy the right to handle all claims against the insured, including the right to make a binding settlement, the insurer assumes a fiduciary position towards the insured and becomes obligated to act in good faith and with due care in representing the interests of the insured. If the insurer is derelict in this duty, as where it negligently investigates the claim or unreasonably refuses an offer of settlement, it may be liable regardless of the limits of the policy for the entire amount of the judgment secured against the insured." *Gedeon v. State Farm Mutual Automobile Insurance Company,* 410 Pa. 55, 59, 188 A. 2d 320, 322 (1963); see *Cowden v. Aetna Casualty and Surety Company,* 389 Pa. 459, 134 A. 2d 223 (1957). On this basis, appellant seeks to recover the balance originally due from

MacLatchie as assignee of all of MacLatchie's rights against appellee under the policy.

Two questions must be decided by us in this appeal:

1.   Did MacLatchie's cause of action against appellee arise before he paid appellant the balance due on the judgment?

2.   If such cause of action did arise, was it assignable by MacLatchie to appellant?

## I

The lower court held that payment of the judgment by the insured is a prerequisite to his right of action. The court stated: "Even if we assume that Nationwide was guilty of bad faith in its negotiations with Gray, then the failure of MacLatchie to actually pay the claim, i.e., the excess, removes the very basis upon which MacLatchie's cause of action would be bottomed."

The Court cited no authority in support of this proposition, and my research has disclosed no Pennsylvania appellate decision which squarely decides this question. It is fair to say, however, that in the many jurisdictions where this issue has recently been raised, the great weight of authority holds the view that payment is not a prerequisite to recovery.[1]   See *Sweeten v. National Mutual Insurance Company of D. C.*, 233 Md. 52, 57, 194 A. 2d 817, 819 (1963).

---

[1] It is true that, "The older decisions require payment of the excess judgment as a condition precedent to recovery, reasoning that until actual payment is made, the injury to the insured is both contingent and speculative. On the other hand, the more recent decisions have held that the entry of judgment completes the actionable wrong and that it is sufficiently injurious to permit the insured to recover damages from the insurer." 60 Mich. L. Rev. 517, 518 (1962), and cases therein. This excellent article, in addition, summarizes and analyzes the various reasons offered by courts in support of the more recent rule.

In *Southern Fire & Casualty Company v. Norris,* 250 S.W. 2d 785, 791 (Tenn. 1952), the Court said: "If the insured had not felt the need of the protection offered by the policy and the services of the Company in handling claims against him it is to be assumed he would not have taken the policy. The claim is now an adjudged liability which he can escape only by a discharge in bankruptcy or by payment. If he chooses the former course his credit is impaired. If he does not the outstanding judgment against him is likely to prove an insurmountable barrier to payment. If prepayment is required in cases of this kind, the insurer is likely to be less responsive to its trust duties in cases where the insured is insolvent than in cases where the insured is able to discharge any judgment in excess of the policy limit which may be rendered against him."

In *Smoot v. State Farm Mutual Automobile Insurance Company,* 299 F. 2d 525, 530 (5th Cir. 1962), the Court said in support of the nonpayment rule: "So long as this judgment remains outstanding as a lien on the Assured's property he is thwarted in a disposition of it. If proper procedural steps are taken, new property likewise comes under the pervasive weight of the lien. And all the while, of course, credit resources are imperiled—a result even more inescapable if, as the Insurer now suggests, the victim of its assumed neglect must take bankruptcy."

See also *Lee v. Nationwide Mutual Insurance Company,* 286 F. 2d 295 (4th Cir. 1961); *Brown v. Guarantee Insurance Company,* 319 P. 2d 69 (Cal. 1957); *Ferris v. Employers Mutual Casualty Company,* 122 N.W. 2d 263 (Iowa 1963); *Schwartz v. Norwich Union Indemnity Company,* 250 N.W. 446 (Wis. 1933); *Jensen v. O'Daniel v. National Farmers Union Property & Casualty Co.,* 210 F. Supp. 317 (D.C. Mont. 1962); *Southern Farm Bureau Casualty Ins. Co. v. Mitchell,* 312 F. 2d 485 (8th Cir. 1963); *Alabama Farm Bureau Mutual*

*Insurance Company v. Dalrymple,* 116 So. 2d 924 (Ala. 1959); *National Farmer Union Property & Casualty Company v. O'Daniel,* 329 F. 2d 60 (9th Cir. 1964); *Burton v. State Farm Mutual Automobile Insurance Company,* 335 F. 2d 317 (5th Cir. 1964); and *Anderson v. St. Paul Mercury Indemnity Company,* 340 F. 2d 406 (7th Cir. 1965).

As I have indicated, there are no controlling cases in Pennsylvania which are precisely on point. The principles stated in *Malley v. American Indemnity Company,* 297 Pa. 216, 146 A. 571 (1929), however, are in accord with the principles expressed by those Courts which have accepted the nonpayment rule. In *Malley,* a judgment was entered against the insured for personal injuries sustained in an automobile collision. Although the insurance carrier undertook the entire defense of the case, it refused payment on the policy after the verdict against its insured was returned. The insured filed a petition for a Declaratory Judgment. The Supreme Court rejected the insurer's contention that the insured could not assert his right until after he had paid the judgment, stating: "It is even more important to an assured who is in financial stress that no judgment be allowed to stand unsatisfied against him than it is to one who has abundant means to satisfy it with." 297 Pa. at 223. The Court further explained: "Loss does not have an inflexible meaning and may consist of many different situations of varying gradations. Voluntary or involuntary separation from one's money is not the only criterion of loss. Any shrinkage in value of estate or property may on proper occasions be rightfully so termed. . . . Therefore, . . . we hold there is a potential loss, though money may not have been actually paid; the insured may sue the company directly after judgment and before he pays anything . . ." 297 Pa. at 223.

I find that the principles expressed in *Malley,* supra, and the cases cited from other jurisdictions are

persuasive. They point out, precisely and penetrating- ly, the injustice inherent in a procedure which would deny an insured the right to sue his insurer, until he discharges the excess judgment. Such an approach would bar forever the meritorious claim of an insured who cannot first pay the debt imposed upon him. It could subject him to an undeserved lifelong obligation. Moreover, it would tend to protect an insurance com- pany which has been derelict in representing the inter- ests of its insured. Conversely, permitting an insured to bring his suit before he pays the balance due would work no undue hardship on the insurance company. It would, rather, induce the company to act in good faith and with due care, regardless of the insured's ability to satisfy independently the judgment against him.

I would hold, therefore, that an insured's cause of action against his insurance company arises even though he has not yet paid the excess judgment. Consequently, MacLatchie need not have paid the judgment before asserting his claim against appellee.

## II

Appellee contends that MacLatchie's cause of action is in tort and cannot be validly assigned. Appellant argues, however, that the claim is in contract, and that its assignment is not prohibited by statute, by the con- tract creating the right, or by the policy of the common law. Our Supreme Court has not decided whether an insured has the right to elect between an action in con- tract and an action in tort. In similar cases, however, the Court has indicated that an action in contract is not improper.[2]

---

[2] In *Gedeon v. State Farm Mutual Auto Insurance Company,* supra, 410 Pa. at 58, the Court spoke in terms of contract: "Under a typical automobile liability insurance policy, such as the one be-

Even if the cause of action is in tort, however I cannot agree with appellee that it is not assignable. Unlike an unliquidated claim for personal injury, a tort claim for damage to property interests is assignable. *Coons v. McKees Rocks Boro,* 243 Pa. 340, 90 A. 141 (1914) ; *Maxon v. Chaplin,* 9 Pa. D. & C. 2d 649 (1956) ; 6 C.J.S., Assignments, §34, p. 1082; Restatement, Contracts, §547 (2) (1932).[3]

The present action does not involve wrongs of a purely personal nature such as negligent personal injury, slander, false imprisonment, malicious prosecution, or assault. It is concerned only with an injury which results in damages to the property interest or estate of the insured. Recent decisions in other jurisdictions support this view : "The (insurer's) act strikes the insured in his pocket book and diminishes his estate . . . ; it does not harm his person or his personality. If the act is a tort, it is a tort affecting the insured's property and is not personal to him." *Brown v. Guarantee Insurance Company,* 319 P. 2d 69, 79 (1957) ; see also *Comunale v. Traders & General Insurance Company,* 328 P. 2d 198 (1958) ; *Moore v. United States Fidelity & Guaranty Company,* 325 F. 2d 972 (10th Cir. 1963). Although the appellate courts in Pennsylvania

---

fore us, the insurer undertakes three distinct types of obligations . . .;" the Court included as one of the obligations undertaken in the policy the duty to act in good faith and with due care in representing the interest of the insured. Similarly, in *Cowden v. Aetna Casualty & Surety Company,* supra, although the claim was filed in tort, the Court held that the insurer may be liable if its ". . . handling of the claim, including a failure to accept a proffered settlement, was done in such a manner as to evidence bad faith on the part of the insurer in the discharge of its *contractual duty.*" (emphasis added) 389 Pa. at 468.

[3] The Restatement further points out in that section that an assignment of such a claim, ". . . is not rendered illegal by the fact that the claim is being litigated, or that litigation is necessary for its collection ;".

have not passed specifically upon this point, our Supreme Court in *Malley v. American Indemnity Company*, supra, similarly described the "loss" to an insured against whom a judgment is entered as "any, shrinkage in value of estate or property."

Appellee's reliance on *Sensenig v. Pennsylvania Railroad Company*, 229 Pa. 168, 78 A. 91 (1910), for the proposition that a claim for damage to the economic interests of an insured cannot be assigned is misplaced. That case involved a suit under a statute to recover damages from a carrier for discrimination in freight charges. The Court viewed the cause of action under the Act as purely personal, since the "Act of 1883 makes the carrier liable 'to the party injured' and not to his legal representative or his assigns." Furthermore, the Court emphasized that the only question raised was "Whether a suit brought against a common carrier to recover damages for discrimination *under the act of June 4, 1883,* is assignable before verdict," (emphasis added), and that "the right to sue at common law is not fairly in question in this case. . . ." 229 Pa. at 171, 173.

The lower court resisted an assignment because it feared possible fraud. The court stated: "Let us assume that MacLatchie is execution proof, he relieves himself of the excess of the judgment by an assignment at no cost to himself, then combines with the judgment holder against the insurance company."

The fears of the lower court are unwarranted. The possibility of collusion between a judgment holder and an insured is in no way increased by an assignment. If the insured's liability on the judgment is not affected by the assignment, the interests of the parties are similarly unaffected. Whether the action would be brought in the name of the policyholder or in the name of the assignee, the policyholder would be intent upon relieving himself of the excess judgment, and the as-

signee would be seeking to secure the balance due him. If the insured's liability is terminated by the assignment, as in the present case, the possibility of collusion is more remote. Having been relieved of the judgment, the insured no longer has any pecuniary interest in the outcome of the litigation. I cannot agree with the lower court, therefore, that the parties would be more inclined to act fraudulently if the cause of action is assigned.

Appellee also contends that the assignment is barred by Section 9 of the policy which provides that "No interest in this policy can be transferred to another person unless the company's consent is endorsed hereon." This provision, however, does not preclude the assignment of a claim for damages. ". . . [A]fter a loss has occurred and rights under the policy have accrued, an assignment may be made without the consent of the insurer, even though the policy prohibits assignments. Under such circumstances, the assignment of a right under the policy is not regarded as a transfer of the policy itself, but rather of a chose in action." 7 Appelman, Insurance Law and Practice, §4269, p. 70 (1962); see *National Memorial Services, Inc. v. Metropolitan Life Insurance Company,* 355 Pa. 155, 49 A. 2d 382 (1946) (affirming on the opinion in 159 Pa. Superior Ct. 292, 48 A. 2d 143 (1946)); 6 Couch, Insurance §1459, pp. 5276-5278 (1930) and pocket supplement pp. 126-127 (1965); *Comunale v. Traders & General Insurance Company,* supra, 328 P. 2d at 202 (1958).

In his pleadings, appellant asserts that he has the right to bring suit against the insurer as a third party beneficiary. The allegations he makes and the relief he requests, whether as assignee or as third party beneficiary, are identical. Since I would recognize appellant's right to maintain this action as assignee, I do not reach the question of his status as a third party beneficiary.

I would reverse the order of the lower court and remand the case for further proceedings.

ERVIN, P. J., and WATKINS, J., join in this opinion.