## Gray, Appellant, v. Nationwide Mutual Insurance Company.

Argued April 20, 1966. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

*Milford J. Meyer,* with him *Charles H. Weidner,* and *Meyer, Lasch, Hankin & Poul,* and *Stevens & Lee,* for appellant.

*Michael Shekmar,* for appellee.

OPINION BY MR. JUSTICE JONES, September 27, 1966:

Robert A. Gray (Gray) instituted a trespass action against Robert B. MacLatchie (MacLatchie), for personal injuries and property loss suffered as the result of a collision which occurred at a street intersection on April 5, 1957, between Gray's automobile and an automobile owned and driven by MacLatchie. At the time of the accident, MacLatchie was insured by Nationwide Mutual Insurance Company (Nationwide), under an automobile liability policy, the coverage of which was limited to $5,000 for personal injuries plus interest, costs and property damage. Nationwide undertook to defend MacLatchie pursuant to the provisions of its insurance policy. Gray obtained a $15,000 jury verdict against MacLatchie. Post-trial motions for judgment n.o.v. and for a new trial were denied and the judgment entered on the verdict was affirmed per curiam, on May 22, 1961, by this Court: *Gray v. MacLatchie,* 403 Pa. 595, 170 A. 2d 590 (1961).

Nationwide paid its entire policy coverage with interest and costs on account of the judgment to Gray in the sum of $5,236.67. Gray demanded the balance of the judgment, $9,763.33, from MacLatchie who, then, assigned to Gray all of his rights against Nationwide. This assignment provided that, regardless of the outcome of Gray's suit against Nationwide, any obligation of MacLatchie owed to Gray would be satisfied at the conclusion of the suit of Gray against Nationwide.

Gray, on the basis of the assignment of MacLatchie, then instituted an assumpsit action against Nationwide in the Court of Common Pleas No. 5 of Philadelphia

County to recover the balance of the judgment. Nationwide filed preliminary objections in the nature of a demurrer which the court below sustained and Gray's complaint was dismissed. Gray then appealed to the Superior Court which affirmed the trial court's order by an equally divided court:[1] *Gray v. Nationwide Mutual Insurance Company*, 207 Pa. Superior Ct. 1, 214 A. 2d 634 (1965). On December 3, 1965, the Superior Court certified this appeal to our Court at Gray's costs.

Gray asserted in his complaint that, prior to the Gray-MacLatchie suit, he had made an offer to settle with Nationwide within the liability limits of MacLatchie's policy but that Nationwide had refused this offer, *allegedly in bad faith*, forcing Gray to bring suit;[2] that judgment on the verdict in that suit having been rendered at $15,000 or, in other words, $10,000 over the liability limits of MacLatchie's policy, MacLatchie had the right to be reimbursed by his insurer, Nationwide for the *entire* amount of the judgment; therefore, Gray concluded that, since MacLatchie had assigned all his rights against Nationwide to Gray, he, Gray, standing in MacLatchie's shoes, could sue Nationwide directly for the unpaid balance of the judgment.

---

[1] The Superior Court split three to three. WRIGHT, J., filed an opinion supporting the affirmance of the order in which MONTGOMERY, J., joined. JACOBS, J., filed a separate opinion supporting the affirmance of the order. HOFFMAN, J., filed a dissenting opinion in which ERVIN, P. J., and WATKINS, J., joined.

[2] The policy wherein Nationwide promised to represent MacLatchie with respect to suits against him for liability for injury caused by the insured's vehicle reads in part: ". . . [Nationwide] shall: (1) defend any suit against a person entitled to protection alleging such injury, sickness, disease or destruction and seeking damages on account thereof. Such suit shall be defended even if groundless, false or fraudulent. The *Company* [Nationwide] *may make any investigation, negotiation and settlement of any claim or suit as it deems expedient*;" (emphasis added).

We believe Gray's contentions are meritorious. Because Nationwide's preliminary objections in the nature of a demurrer were sustained by the trial court, *we must assume*, for purposes of this appeal, that, *as alleged, Nationwide did act in bad faith by refusing to settle with Gray for an amount within the limits of MacLatchie's policy*.[3] Nationwide's breach of its obligation gave MacLatchie a right of action against it for the amount of judgment against him in excess of the limits of the policy coverage: *Cowden v. Aetna Casualty and Surety Company*, 389 Pa. 459, 134 A. 2d 223 (1957). ". . . [B]y asserting in the policy the right to handle all claims against the insured, including the right to make a binding settlement, the insurer assumes a fiduciary position towards the insured and becomes obligated to act in good faith and with due care in representing the interests of the insured. If the insurer is derelict in this duty, as where it negligently investigates the claim or unreasonably refuses an offer of settlement, it may be liable regardless of the limits of the policy for the entire amount of the judgment secured against the insured.": *Gedeon v. State Farm Mutual Automobile Insurance Company*, 410 Pa. 55, 59, 188 A. 2d 320, 322 (1963).

Initially, we must decide whether or not Mac-Latchie's *payment* to Gray of the balance due on the judgment is a prerequisite to a cause of action in Mac-Latchie against Nationwide.[4] There is no Pennsylva-

---

[3] If a demurrer to a complaint is sustained by the trial court, all well-pleaded facts but not conclusions of law in the complaint must be accepted as true on appeal: *Eden Roc Country Club v. Mullhauser*, 416 Pa. 61, 204 A. 2d 465 (1964). Consequently, here we must accept as true that Nationwide acted in bad faith by refusing to settle with Gray for $5,000 or less.

[4] Nationwide denies this is an issue before this Court because it was neither raised in the pleadings nor was it a basis of the decision in the trial court. We disagree. The trial court's opinion

nia decision directly on point, but a number of other jurisdictions have faced exactly this problem. "Despite some conflict in earlier cases, the weight of authority is that it is not necessary for the insured to allege that he has paid or will pay a judgment in excess of the policy limits in an action against the insurer for breach of its duty to act in good faith. Lee v. Nationwide Mut. Ins. Co., 286 F. 2d 295 (4th Cir.) ; Wessing v. American Indem. Co., D. C., 127 F. Supp. 775; Alabama Farm Bureau Mut. Cas. Ins. Co. v. Dalrymple [270 Ala. 119, 116 So. 2d 924] ; Farms Ins. Exch. v. Henderson, 82 Ariz. 335, 313 P. 2d 404; Brown v. Guarantee Ins. Co., 155 Cal. App. 2d 679, 319 P. 2d 69, 66 A.L.R. 2d 1202; Henke v. Iowa Home Mut. Cas. Co., 250 Iowa 1123, 97 N.W. 2d 168; Southern Fire & Cas. Co. v. Norris [35 Tenn. App. 657, 250 S.W. 2d 785]. See Murray v. Mossman, 56 Wash. 2d 909, 355 P. 2d 985." : *Jenkins v. General Accident Fire & Life Assurance Corporation,* 349 Mass. 699, 703, 212 N.E. 2d 464, 467 (1965). See also: *Burton v. State Farm Mutual Automobile Insurance Company,* 335 F. 2d 317 (5th Cir. 1964) ; *Sweeten v. National Mutual Insurance*

considers MacLatchie's non-payment of the balance as a vital reason for justifying the dismissal of the complaint: "In Cowden v. Aetna Casualty & Surety Co., 389 Pa. 459, plaintiff sued his insurance company for the amount in excess of the coverage that he was required to pay. *MacLatchie in this case has had to pay nothing, therefore, any right he has exists only in theory. Even if we assume that Nationwide was guilty of bad faith in its negotiations with Gray, then the failure of MacLatchie to actually pay the claim, i.e., the excess, removes the very basis upon which MacLatchie's cause of action would be bottomed.* We *also* are of the opinion that the claim against the insurance company in this instance, is of a personal nature and therefore nonassignable. Sensenig v. Pa. R.R. Co., 229 Pa. 168." (Emphasis added).

The question of the effect of non-payment of the balance of the judgment by MacLatchie is, therefore, properly before our Court because it was an alternative holding of the trial court.

*Company of D. C.,* 233 Md. 52, 194 A. 2d 817 (1963). Three very sound reasons justify the adoption of this "nonpayment" view: (1) such view prevents an insurer from benefiting from the impecuniousness of an insured who has a meritorious claim but cannot first pay the judgment imposed upon him; (2) such view negates the possibility that the insurer would be ". . . less responsive to its trust duties where the insured is impecunious than where the insured is able to pay the excess judgment. Were payment the rule, an insurer with an insolvent insured could unreasonably refuse to settle, for, at worst, it would only be liable for the amount specified by the policy. To permit this would be to impair the usefulness of insurance for the poor man." Note, 27 U. Pitt. L. Rev. 726, 728 (1966); (3) such view recognizes that the fact of entry of the judgment itself against the insured constitutes a real damage to him because of the potential harm to his credit rating; see, generally, Note, 27 U. Pitt. L. Rev. 726 (1966); Note, 60 Mich. L. Rev. 517 (1962); Keeton, Liability Insurance and Responsibility for Settlement, 67 Harv. L. Rev. 1136 (1954).

Concluding that MacLatchie did not have to pay the excess judgment before asserting his claim against Nationwide, we next must consider the question of whether or not MacLatchie can validly assign his claim to Gray.

To solve this problem, novel in Pennsylvania, we must first dispel a line of reasoning maintained by Nationwide, the trial court and three members of the Superior Court which urges that Gray has no direct right of action against Nationwide because (a) Gray is a stranger to the relationship between the insured and the insurer, the latter owing no duty to Gray; (b) Gray has actually benefited by the action of Nationwide in not settling within policy limits rather than having actually sustained any damage; therefore, Gray should not be allowed to do indirectly by assignment

what he cannot do directly. We believe that, while premises (a) and (b) are correct, such premises are irrelevant in the factual posture of this litigation. Gray is not suing *in his own right* but is suing *as an assignee of MacLatchie, the insured*; consequently, Gray is standing in MacLatchie's shoes. It is immaterial, therefore, that no duty is owed to Gray *in his own right* by the insurer and that, while Gray may be said to have benefited by the failure to settle,[5] MacLatchie *was* definitely injured thereby. Finally, if MacLatchie's cause of action can be assigned to Gray, then Gray can, as any other assignee, do indirectly what he could not have done directly.

Our task is to determine whether MacLatchie, the insured, has a cause of action in assumpsit or in tort against the insurer for its wrongful refusal to settle. In *Cowden v. Aetna Casualty and Surety Company*, 389 Pa. at 468, the late Mr. Chief Justice CHARLES ALVIN JONES stated: "It is established by the greatly preponderant weight of authority in this country, that an insurer against public liability for personal injury may be liable for the entire amount of a judgment secured by a third party against the insured, regardless of any limitation in the policy, if the insurer's handling of the claim, including a failure to accept a proffered settlement, was done in such a manner as to evidence bad faith on the part of the insurer *in the discharge of its contractual duty.*" (Emphasis added). Giving the reason for this rule, Mr. Chief Justice JONES continued: "And, in Wiener v. Targan, 100 Pa. Superior Ct. 278, 284, it was recognized that the *contractual relationship* under an indemnity policy was one requiring 'a high

---

[5] The statement that Gray has benefited from Nationwide's failure to settle because it resulted in a larger verdict for Gray is oversimplified. Gray had to expend considerably more time and money in order to bring suit than he would have if Nationwide had accepted his settlement offer.

degree of good faith in the conduct of the indemnity company's counsel generally. . . .'": 389 Pa. at 469. (Emphasis added). In *Gedeon v. State Farm Mutual Automobile Insurance Company,* 410 Pa. 55 (1963), Mr. Justice COHEN elaborated on the duties of an insurer to his insured: "Under a typical automobile liability insurance policy, such as the one before us, the insurer undertakes *three distinct types of obligations,* each of which involves different elements of proof to establish *breach* thereof, and from the *breach* of which different measures of recovery result." 410 Pa. at 58. (Emphasis added). "Thirdly, by asserting in the policy the right to handle all claims against the insured, including the right to make a binding settlement, the insurer assumes a fiduciary position towards the insured and *becomes obligated* to act in good faith and with due care in representing the interests of the insured." 410 Pa. at 59 (Emphasis added). We believe that this recent case law, employing contractual terms for the obligation of the insurer to represent in good faith the rights of the insured, indicates that a breach of such an obligation constitutes a breach of the insurance contract for which an action of assumpsit will lie.

Similar language has been employed by the Supreme Court of California: "When there is great risk of a recovery beyond the policy limits so that the most reasonable manner of disposing of the claim is a settlement which can be made within those limits, a consideration in good faith of the insured's interest requires the insurer to settle the claim. Its unwarranted refusal to do so constitutes *a breach of the implied covenant* of good faith and fair dealing.": *Comunale v. Traders & General Insurance Company,* 50 Cal. 2d 654, 659, 328 P. 2d 198, 201 (1958). (Emphasis added).[6]

---

[6] The California Supreme Court has held that "[a]n action for damages in excess of the policy limits based on an insurer's wrong-

Our conclusion is further buttressed by the rationale in *In Re Layton*, 221 F. Supp. 667 (D. Ariz. 1963). See also: *Anderson v. St. Paul Mercury Indemnity Company*, 340 F. 2d 406 (7th Cir. 1965). If, as we believe, the insured's claim is based on a breach of contract and is not personal to the insured, then it would follow that, if the insured were to file in bankruptcy, his cause of action against the insurer would be a part of the bankrupt estate which would vest in his trustee in bankruptcy. *In Re Layton*, 221 F. Supp. at 668, so holds. " 'It [the insurer] must consider also the impact of its decision (whether to settle within policy limits or to litigate) upon its insured and deal fairly and in good faith. This duty arises not so much under the terms of the contract but is said to arise because of the contract and to flow from it.' Southern Fire & Casualty Co. v. Morris, 35 Tenn. App. 657, 250 S.W. 2d 785, 790 (1950), cited in Farmers Insurance Exchange v. Henderson, 82 Ariz. 335, 313 P. 2d˙404, 408 (1957). I [District Judge East] would liken this duty to that of *an implied contractual warranty* on the part of the compensated insurer to at all times exercise due care and good faith when utilizing its expertise during its exclusive control of investigating and conducting the defense of claims against its insured. *Under this concept the chose in action sounds in contract rather than in tort*—likened to a manufacturer's or a stevedore's im-

---

ful failure to settle is assignable whether the action is considered as sounding in tort or in contract." *Comunale v. Traders & General Insurance Company*, 328 P. 2d 198, 202. The need to characterize the insured's cause of action as one or the other is superfluous in California due to Cal. Civ. Code §954; *Brown v. Guarantee Ins. Co.*, 155 Cal. App. 2d 679, 693-695, 319 P. 2d 69, 78. "Civil Code §954 provides in part: 'A thing in action, arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner.' Under this section it is clear that the insured's cause of action is assignable if it is based upon contract. However, it is nevertheless assignable even if based upon tort.": *Brown v. Guarantee Insurance Company*, 319 P. 2d at 78.

plied warranty of fitness and meet and proper conduct." *In Re Layton,* 221 F. Supp. at 668 n. 1. (Emphasis added). If we permit the assignment in cases such as the one at bar, bankruptcy proceedings would be unnecessary; the insured, after a judgment has been rendered against him, can follow the more simple and less expensive procedure of assigning the cause of action against the insurer, directly, to his judgment creditor.

The final phase of our inquiry is to answer the question, if the insured's right of action is in assumpsit which would pass to his trustee in bankruptcy if he was forced into or filed for bankruptcy, is this right of action assignable? In an assumpsit action, where the measure of damages is fixed and the amount of damages can be specifically ascertained, the action may be assigned even though litigation is necessary for its collection: *Glenside Home Protective Association v. Cheltenham and Abington Sewerage Company,* 81 Pa. D. & C. 349, 352 (1949). In our view, MacLatchie could assign his claim against Nationwide to Gray.

The main public policy reason against the result we reach, as articulated by the trial court and Judges WRIGHT and MONTGOMERY of the Superior Court, is that it will foster fraud and collusion between the insured and the injured claimant. We disagree. As Judge HOFFMAN so ably reasoned in his dissenting opinion: "The fears of the lower court are unwarranted. The possibility of collusion between a judgment holder and an insured is in no way increased by an assignment. If the insured's liability on the judgment is not affected by the assignment, the interests of the parties are similarly unaffected. Whether the action would be brought in the name of the policy-holder or in the name of the assignee, the policy-holder would be intent upon relieving himself of the excess judgment and the assignee would be seeking to secure the balance due him. If the insured's liability is terminated by the assign-

ment, as in the present case, the possibility of collusion is more remote. Having been relieved of the judgment, the insured no longer has any pecuniary interest in the outcome of the litigation." *Gray v. Nationwide Mutual Insurance Co.,* 207 Pa. Superior Ct. at 10, 11 (Dissenting opinion by HOFFMAN, J. in which ERVIN, P. J., and WATKINS, J. joined.)

Permitting an insured to assign his claim to the injured claimant would put the claimant on more of an equal footing with the insured's insurance company in settlement negotiations without tipping the balance against an insurer who could still refuse to settle in good faith. "This result may seem anomalous in that the plaintiff, who previously offered to settle his claim for $5,000, has now acquired the right to maintain against defendant insurer an action which arose by reason of that offer to settle. *But it must be borne in mind that plaintiff merely stands in the shoes of the insured;* it is the insured who has allegedly suffered the wrong at the hands of the insurer. It might be said that the result reached herein will cause more injured claimants to propose settlement for the policy limit when the insurance company is defending the action against an insured who is apparently judgment-proof. *Yet the insurer has nothing to fear so long as its refusal to settle is made in good faith. And it is fundamental that the law favors settlements":* Brown v. Guarantee Insurance Company, 319 P. 2d 69, 79. (Emphasis added).[7]

---

[7] We believe the conclusion we reach will streamline the former needlessly complicated and unjust procedure. Instead of the claimant having to wait for the insured to undergo the time and expense of suing the insurer and then be paid by the insured, if the insured will assign his right of action, claimant then can sue the insurer directly. Instead of fostering the insured's fear that the claimant may force him into bankruptcy before the insured can collect the excess judgment from his insurer, we now give the insured a remedy by way of assignment.

512

Because of our disposition of the assignment issue, we do not need to reach Gray's other contention.

Order reversed and remanded for further proceedings not inconsistent with this opinion.

Mr. Chief Justice BELL dissents.