450 P.2d 460

Edward Wilson AMMERMAN, by his Guardian Ad Litem, LaVerne Bruce Ammerman, and Eddie Soliz, Plaintiffs and Appellant,

v.

FARMERS INSURANCE EXCHANGE, Defendant and Respondent.

No. 11068.

Supreme Court of Utah.

Feb. 10, 1969.

Carman E. Kipp and J. Anthony Eyre, of Kipp & Charlier, Reed H. Richards, Salt Lake City, for appellant.

Don J. Hanson and W. Brent Wilcox, of Hanson & Garrett, Salt Lake City, for respondent.

CALLISTER, Justice.

One Eddie Soliz was rendered judgment again Edward Wilson Ammerman for personal injuries sustained in an automobile accident in the sum of $15,282. This judgment was affirmed upon appeal to this court.[1] Subsequently, Soliz and Ammerman, as joint plaintiffs, commenced an action against Farmers Insurance Exchange, Ammerman's automobile insurance carrier,

1. Soliz v. Ammerman, 16 Utah 2d 11, 395 P.2d 25 (1964).

alleging that the latter had negligently and in bad faith failed to accept an offer of settlement in an amount less than the policy limit which was $10,000. They asked to recover for the amount of the judgment in excess of the policy limit which Farmers had paid to Soliz after the affirmance by this court of the original judgment.

Soliz and Ammerman prevailed in this second action and Farmers appealed. We reversed for the reason that Soliz was the actual party plaintiff and that he, as a judgment creditor, had no privity of contract with Farmers and could not appropriate to himself the claim of Ammerman. Further, it was pointed out that Soliz had been paid $10,000 and obtained a judgment for $5,282, which was in excess of the $9,000 offer of settlement, and therefore had suffered no loss. The case was remanded for proceedings not inconsistent with the court's opinion.[2]

■ Upon remand, Soliz withdrew as a party plaintiff and Ammerman pursued the action by himself against Farmers. At this juncture the law firm of Kipp & Charlier became associated as counsel for Ammerman. Farmers made a motion "requiring the law firm of Kipp & Charlier to show by what authority it appears as attorney for the plaintiff." This law firm had previously represented Soliz in all prior proceedings, and the trial court found that they had also represented Ammerman in the prior proceedings wherein Soliz and Ammerman were joint plaintiffs. Be that as it may, the trial court found that Kipp & Charlier had authority to represent Ammerman in this action and that there was no conflict of interest. We agree.

Subsequently, Farmers made a motion for summary judgment which was granted and Ammerman's complaint dismissed upon the ground that Ammerman had suffered no damage by reason of the judgment in excess of the policy limit.

It was brought out on the hearing of the motion relating to the authority of Kipp & Charlier that an oral agreement had been made by this law firm with Ammerman's attorney that Soliz would not execute upon his judgment if Ammerman, who was unable to pay the judgment, would cooperate in seeking to have Farmers satisfy the same. Farmers would characterize this agreement as an accord and satisfaction. We do not so view it. The lower court found:

* * * That said agreement provides no execution will be taken against Edward Wilson [Ammerman] or other proceeding taken to collect the said judgment from Edward Wilson Ammerman and that said judgment will be released

2. 19 Utah 2d 261, 430 P.2d 576 (1967).

*provided* Edward Wilson Ammerman and his attorney, Reed H. Richards, cooperate with the firm of Kipp & Charlier and Eddie Soliz and do everything reasonably necessary on their part to collect the [j]udgment in favor of Soliz and against Ammerman from the Farmers Insurance Exchange. [Emphasis added.]

■ This agreement is executory in nature and does not, as of now, amount to an accord and satisfaction. The promise of Ammerman has not been fully performed. This court has stated:[3]

* * * The law of accord and satisfaction makes a distinction between an agreement accepted as a satisfaction and an agreement whose performance is to be accepted as satisfaction.

Farmers contends, however, that even though the agreement is not considered an accord and satisfaction, Ammerman's claim is nevertheless barred because he has suffered no damage—he has not paid the excess judgment or any part thereof.

■ We are cognizant of the several cases which hold that there must be a prepayment by the insured before he can maintain an action against his insurer for the excess judgment.[4] However, we are of the opinion that the cases to the contrary (and perhaps the majority) are the better reasoned.[5]

Closely analogous to the instant case is Gray v. Nationwide Mutual Insurance Company[6] where the insured had assigned his rights against his insurer to his judgment creditor who brought suit against the insurer for the excess judgment. This assignment provided that, regardless of the outcome of the suit by the judgment creditor against the insurer, any obligation of the insured to the judgment creditor would be satisfied at the conclusion of the suit. The Supreme Court of Pennsylvania upheld the assignment and rule that prepayment by the insured to the judgment creditor was not a prerequisite to a cause of action against the insurer for the excess judgment.

---

3. Whitney v. Richards, 17 Utah 226, 228, 53 P. 1122, 1123 (1898). See also 1 Am. Jur.2d 344; Lee v. Nationwide Mutual Ins. Co., (CCA 4, 1961), 286 F.2d 295, where judgment creditors consented to withhold any action on their judgments until insured could prosecute her claim against the insurer.

4. E. g., Dumas v. Hartford Accident & Indemnity Co. (1942), 92 N.H. 140, 26 A.2d 361; State Automobile .Mut. Ins. Co., etc. v. York (CCA 4, 1939), 104 F.2d 730; Seguros Tepeyac, S. A., Compania, Mexicana, etc. v. Bostrom (CCA 5, 1965), 347 F.2d 168; Stowers Furn. Co. v. American Indemnity Co., (Tex.Com.App., 1929), 15 S.W.2d 544. In its brief Farmers quote from, and rely heavily on, Lee v. Nationwide Mutual Ins. Co. (D.C.Md., 1960). However, this case was overruled by the Circuit Court, supra footnote 3.

5. Note, 27 U.Pitt.L.Rev. (1966), and the numerous cases cited therein.

6. 422 Pa. 500, 223 A.2d 8 (1966).

The court reasoned as follows:

\* \* \* Three very sound reasons justify the adoption of this "non-payment" view: (1) such view prevents an insurer from benefiting from the impecuniousness of an insured who has a meritorious claim but cannot first pay the judgment imposed upon him; (2) such view negates the possibility that the insurer would be "\* \* \* less responsive to its trust duties where the insured is able to pay the excess judgment. Were payment the rule, an insurer with an insolvent insured could unreasonably refuse to settle, for, at worst, it would only be liable for the amount specified by the policy. To permit this would be to impair the usefulness of insurance for the poor man." Note, 27 U.Pitt.L.Rev. 726, 728 (1966); (3) such view recognizes that the fact of entry of the judgment itself against the insured constitutes a real damage to him because of the potential harm to his credit rating; See, generally, Note, 27 U.Pitt.L.Rev. 726 (1966); Note, 60 Mich.L.Rev. 517 (1962); Keeton, Liability Insurance and Responsibility for Settlement, 67 Harv.L.Rev. 1136 (1954).

Reversed and remanded for a trial on the merits. Costs to appellant.

CROCKETT, C. J. and TUCKETT, HENRIOD, and ELLETT, JJ., concur.