Patricia CHRISTIANSEN, Plaintiff
and Appellant,

v.

HOLIDAY RENT–A–CAR, d/b/a Flexi–
Lease, Inc., and Devon K. Hammer,
Defendants and Appellants.

HOLIDAY RENT–A–CAR, d/b/a Flexi–
Lease, Inc., Third–Party Plaintiff
and Appellant,

v.

Harold T. HINCKLEY and Rex Howell,
d/b/a Airport Shuttle Parking, Third–
Party Defendants and Appellees.

HOLIDAY RENT–A–CAR; Patricia
Christiansen; Don Maw and Beverly
Maw; David Lingard; John Lingard;
and Craig Lingard, Plaintiffs and Ap-
pellants,

v.

Harold T. HINCKLEY and Rex Howell,
d/b/a Airport Shuttle Parking, and The
Home Insurance Company, Defendants
and Appellees.

No. 910226–CA.

Court of Appeals of Utah.

Aug. 7, 1992.

Rehearing Denied Sept. 23, 1992.

Certiorari Denied March 2, 1993.

Samuel King, James E. Hawkes, and Craig S. Cook (argued), Salt Lake City, for appellants.

S. Baird Morgan (argued), Strong & Hanni, Salt Lake City, for Home Ins. Co.

Robert L. Stevens (argued), Richards, Brandt, Miller & Nelson, Salt Lake City, for Hinckley, Howell d/b/a Airport Shuttle Parking.

Before BILLINGS, JACKSON and ORME, JJ.

## OPINION

ORME, Judge:

Appellant, the plaintiff in a personal injury suit, challenges the trial court's determination that third-party defendant Airport Shuttle Parking breached a contractual obligation to secure liability insurance for defendant Holiday Rent–A–Car. Alternatively, appellant contests the trial court's decision that, as a result of its breach, the third-party defendant is only liable for $15,000 in damages. We affirm.

## FACTS

In May of 1979, Harold Hinckley and Rex Howell leased a parcel of property near Salt Lake International Airport and began operating an automobile parking service called Airport Shuttle Parking (Airport) on that property. Under the terms of the lease agreement, Airport was obligated to lease and pay rent on all of the buildings which stood on the property. However, the company only needed one small building, to serve as its office. So, to defray rent costs, Airport entered into a sublease agreement with Holiday Rent–A–Car (Holiday) whereby the two companies would share the use and expense of one of the buildings.

As part of the sublease arrangement, Airport allegedly agreed to obtain liability insurance that would cover Holiday once the two companies began sharing Airport's facilities. However, the written sublease agreement included no language addressing Airport's duty to obtain insurance for Holiday; the document's only mention of insurance is a statement that "[l]essee [Holiday] agrees to pay 50% of all utility bills, maintenance, property taxes and insurance (liability & fire)." Nonetheless, Holiday cancelled its existing liability policy once it moved its operations into the shared building.

In February 1980, while cleaning a car wash drain in the shared building, Holiday employees removed the cover from a manhole located immediately on one side of a door. Appellant Patricia Christiansen, a shuttle bus driver for Airport, subsequently walked through the doorway from the other side, did not see the open manhole, and fell into it. As a result, she injured her back. Appellant filed suit against Holiday in June 1981, alleging negligence on the part of Holiday's employees.

In September 1981, Holiday's attorney sent a letter to Airport in which he tendered defense of appellant's claim to Airport based upon the sublease agreement. Airport forwarded the letter to its insurer, the Home Insurance Company (Home). Home agreed to defend Airport in connection with the incident, but not Holiday. It did not regard Holiday as covered under the insurance policy since the policy did not name Holiday as an insured.

In February 1982, Holiday filed a third-party complaint against Airport and its owners, Hinckley and Howell, alleging that under the terms of the sublease agreement Airport was obligated to procure liability insurance that would cover Holiday for any judgment Holiday incurred in the suit filed by appellant. Holiday's complaint claimed that Airport had failed to obtain such liability insurance, thus breaching the sublease agreement. Airport answered the complaint, asserting that the written sublease agreement required Holiday to pay 50% of the insurance premiums, and, since Holiday had failed to do so, the company was not entitled to insurance coverage.

In September 1982, appellant and Holiday reached a settlement under which Holiday agreed to pay appellant $15,000 for her injuries and assign to her Holiday's claims against Airport and Home. In return, appellant agreed not to seek any further recovery from Holiday. The settlement also

called for submission of the issue of damages for a "conditional determination." A hearing was subsequently held, and appellant's damages were set at $246,033.88. Airport's attorney appeared at the hearing to protest it but did not participate in the proceedings. Home was not represented at the hearing.

In October 1982, a trial was held to resolve the issue of whether Airport had promised to add Holiday to Airport's liability policy as an additional insured. Apparently persuaded by the reference in the sublease to a sharing of insurance premiums, testimony about discussions between Airport and its insurance agent, and the timing of Holiday's cancellation of its own policy, the jury returned a special verdict holding that such an obligation existed.[1] Then, in March 1983, Airport moved for summary judgment on the issue of whether it had breached this obligation. In its motion, Airport conceded that it had failed to procure insurance coverage for Holiday, and admitted liability for the $15,000 Holiday had paid to appellant pursuant to the settlement agreement. However, Airport denied liability for the full $246,033.88 judgment. Appellant responded with her own motion for summary judgment, arguing that Holiday was actually covered under Airport's insurance policy and, as a result, Home was liable for the full amount of appellant's judgment. The trial court granted Airport's motion for summary judgment, concluding that Airport's admission it breached the agreement to procure insurance was dispositive and that such breach had caused Holiday $15,000 in damages. Accordingly, Airport was ordered to reimburse Holiday only that amount.

Appellant appealed the summary judgment. The Utah Supreme Court reversed, holding that since appellant had introduced evidence contradicting Airport's admission of breach, "[w]hether Holiday was covered

---

1. The trial did not address whether there had been a breach of this obligation, reserving adjudication of that issue, along with all other "questions or issues with respect to other obligations/liabilities of the third-party defendant Airport Shuttle Parking and/or the Home Insurance Company," for later determination.

by Airport's insurance issued by Home was a genuine issue of material fact that precluded summary judgment." *Christiansen v. Holiday Rent–A–Car*, 742 P.2d 77, 79 (Utah 1987). The Court also vacated the trial court's determination of damages, stating that "the issue of damages should never have been addressed by the trial court in the context of this motion for summary judgment," *id.*, since liability remained in issue. The case was remanded for a determination of whether Holiday was insured under Airport's policy and the calculation of appropriate damages.

On remand, appellant, Airport, and Home all filed motions for summary judgment. Those motions were denied. The trial court then proceeded to examine Airport's insurance policy and concluded that Holiday was not insured under the policy. Accordingly, the court held that Airport had breached its obligation to obtain insurance for Holiday. The trial court then turned to the issue of damages and determined that the only damage Holiday had suffered from Airport's breach was the $15,000 Holiday had paid to appellant. Further, the court held the $246,033.88 consent judgment was unenforceable against Airport.

Appellant now challenges the trial court's decision that Holiday was not insured under Airport's policy. Alternatively, appellant claims that, even if Holiday was uninsured, Airport is liable for the full amount of the judgment.

## I. HOLIDAY IS NOT AN INSURED OF HOME

Appellant claims that, as a result of the interlocking relationship of several provi-

sions of Airport's liability policy issued by Home, the policy provides coverage for Holiday. The trial court on remand declined to adopt appellant's position, holding that "Holiday is not a named insured. Furthermore, Holiday is not an additional insured under Paragraph III of the Insuring Agreements [defining 'insured'].... It is therefore clear that Holiday is not covered and Airport breached its contract to extend coverage to Holiday."

■ In this case, interpretation of Airport's liability policy is a question of law determined solely by reference to the words in the agreement. *See LDS Hosp. v. Capitol Life Ins. Co.*, 765 P.2d 857, 858 (Utah 1988); *Zions First Nat'l Bank v. National Am. Title Ins. Co.*, 749 P.2d 651, 653 (Utah 1988) (absent trial court's reliance on extrinsic evidence, interpretation of an insurance contract is a matter of law). Accordingly, we afford no particular deference to the trial court's decision that Holiday was not covered under Airport's policy, but review it for correctness. *Carter v. Utah Power & Light Co.*, 800 P.2d 1095, 1097 (Utah 1990).

■ The Insuring Agreements of Airport's insurance policy state, in relevant part: "Coverage E—Liability: This company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies...." Paragraph III of the Insuring Agreements defines "Insured" in considerable detail but does not encompass Holiday within that definition.[2] Nonetheless, appellant claims that Holiday

**2.** Paragraph III states in relevant part:
[w]ith respect to the insurance under Coverage E, the unqualified word "Insured" includes the Named Insured ..., [and] also includes the following:
(a) if the Named Insured is or includes a partnership or joint venture, any partner or member thereof but only with respect to his liability as such;
(b) any executive officer, director or stockholder of the Named Insured while acting within the scope of his duties as such;

(c) if the premises are not owned by the Named Insured, any person or organization having legal title to the premises....
(d) any person (other than an employee of the Named Insured) or organization while acting as real estate manager for the Named Insured;
(e) with respect to the operation, for the purposes of locomotion upon a public highway, of mobile equipment registered under any motor vehicle registration law:

is brought within the scope of coverage by "Exclusion (e)" of the policy, which states: "This policy does not apply: . . . (e) under Coverage E, to liability assumed by the Insured under any contract or agreement except an insured contract. . . ." The policy's definition of "insured contract" includes a written lease of premises, such as the sublease agreement between Airport and Holiday. Thus, as appellant correctly suggests, when Exclusion (e) and the policy definition of "insured contract" are read together, Airport's policy provides coverage for liability claims contractually assumed by Airport under a sublease agreement.

However, appellant fails to surmount the final step in the necessary analysis. It is not enough that Airport was a party to a sublease agreement. In order for appellant's claim against Holiday to survive Exclusion (e) of the policy, Airport must have contracted to assume liability under that agreement.[3] Appellant maintains that, by contractually promising to procure liability insurance for Holiday, Airport did just that. In other words, appellant believes that, under the terms of the sublease, Airport agreed to indemnify Holiday for judgments levied against Holiday by third parties. Since Exclusion (e) of Airport's liability insurance contemplates coverage in such situations, appellant concludes, Airport's insurer, Home, must pay appellant $246,-033.88 on behalf of Airport.

Appellant's assertion that Airport contractually assumed Holiday's liability is incorrect. Airport simply agreed to make Holiday an insured on its existing liability policy, and that was its sole obligation. Airport did not agree to *personally* pay judgments against Holiday; it did not assume liability under the sublease for Holiday's negligence; it did not agree to indem-

nify and hold Holiday harmless from claims of negligence concerning the shared premises. In short, Airport contracted to procure third-party insurance for Holiday; it did not agree to personally indemnify Holiday. Thus, Holiday was not covered under Airport's liability policy, and the trial court correctly ruled that Airport had breached its promise to provide Holiday with insurance coverage.

## II. APPROPRIATE DAMAGES

 It is a well-established legal precept that when a party breaches a contract, that party is liable to the non-breaching party for the amount necessary to place the non-breaching party in as good a position as if the contract had been performed. *See generally* Restatement (Second) of Contracts §§ 344, 347 (1981). In the instant case, the contracting parties were Holiday and Airport. The trial court determined that, if Airport had performed its contractual obligation to make Holiday an insured under Airport's liability policy with Home, Home would have covered Holiday for the $15,000 settlement Holiday paid to appellant. However, as a result of Airport's breach, Holiday was forced to pay the $15,000 itself. Thus, the trial court set Holiday's damages at $15,000 and held Airport liable to Holiday for that amount.

Appellant challenges the trial court's determination that Airport is only liable to Holiday for the $15,000 Holiday paid to appellant. She claims that, under Utah law (1) a party who breaches a contract to procure insurance is liable as an insurer up to the limit of the policy that should have been obtained, and (2) the breaching party is liable for the full amount of a judgment even when the tortfeasor has not been forced to pay the full amount of that judg-

(1) an employee of the Named Insured while operating any equipment in the course of his employment, and
(2) any other person while operating with the permission of the Named Insured any such equipment. . . .
. . . .

**3.** The policy provision thus contemplates the familiar situation where parties to a lease contractually allocate liability as between themselves for injuries sustained by visitors to the property.

ment. So, according to appellant, Airport's failure to procure insurance for Holiday makes Airport liable as a de facto insurer of Holiday and obligates Airport to pay appellant the full $246,033.88 judgment, even though Holiday's actual pecuniary loss is only $15,000.

### A. *Airport Liable for Amount Insurer Would Have Paid*

■ We first consider appellant's claim that Airport is liable as an insurer of Holiday up to the full amount of the policy that should have been procured. All parties to this appeal cite *Pickhover v. Smith's Management Corp.*, 771 P.2d 664 (Utah App. 1989), *cert. denied sub nom., Pickhover v. Young Elec.*, 795 P.2d 1138 (Utah 1990), as dispositive of the issue, and we turn to that opinion for guidance.

In *Pickhover*, a commercial sign company, YESCO, agreed to purchase the assets of a former competitor, Marveon. As part of the written purchase agreement YESCO agreed to provide, at its own expense, liability insurance that would protect Marveon against personal injury claims arising from the installation, ownership or use of Marveon signs. The agreement called for a policy in the amount of one million dollars. *See* 771 P.2d at 665–66. Several years after the purchase agreement was executed, John Pickhover was killed when a commercial sign that had been installed by Marveon fell and struck him. Pickhover's widow subsequently brought a wrongful death action against YESCO and Marveon. Marveon sought a judicial determination that, should judgment be entered against Marveon, YESCO was liable because it had failed to provide the insurance policy as required by the purchase agreement. The trial court agreed with Marveon, ruling that it was entitled to indemnification by YESCO for any judgment entered against Marveon, up to the specified policy amount of one million dollars. *See id.* at 666.

On review, the issue before this court was whether, under the terms of the purchase agreement, YESCO was obligated to provide an insurance policy covering the financial consequences of Marveon's own negligence.[4] The agreement failed to expressly mention whether the policy was intended to cover such situations, and YESCO urged this court to strictly construe the terms of the agreement as excluding such coverage absent clear and unequivocal language. Since no such language existed, YESCO claimed it was not liable for any judgment levied against Marveon in the underlying wrongful death action because the judgment would necessarily be based on Marveon's negligence. *See id.*

This court declined to adopt YESCO's position for the reason that, while Utah law requires strict construction of indemnity agreements, it does not dictate the same treatment for agreements to provide insurance for another. "We are convinced that an agreement to provide insurance for another's benefit, while analogous in some respects to an agreement to indemnify another for the consequences of its own negligence, is not subject to the strict construction rule." *Id.* at 667. The court then affirmed the trial court's ruling, effectively holding that, as a result of its breach, YESCO was liable for any judgment entered against Marveon up to the intended policy limit of one million dollars. *Id.* at 670.

Other sources have reached the same conclusion by analogizing between the breaching party and an insurer. In *Richmond v. Grabowski*, 781 P.2d 192 (Colo. App.1989), the court held that "[i]n general, the party who agrees to procure the insurance and fails to do so assumes the position of the insurer and, thus, the risk of loss." *Id.* at 194. *Accord* 44 C.J.S. *Insurance* § 225 at 940 (1945) ("[t]he measure of damages for breach of the contract to procure insurance is the amount which might have

---

**4.** We note that this issue is not raised in the instant appeal. It has already been established that an agreement to procure insurance was made, and neither party claims the agreement did not contemplate coverage for injuries occasioned by Holiday's own negligence.

been recovered under such insurance if procured as agreed").

Applying the principles of *Pickhover* and *Richmond* to the instant facts, we conclude that Airport is liable to Holiday for any amount that Home would have been obligated to pay on behalf of Holiday under the terms of the policy which should have been procured by Airport.

### B. *Damages Owed by Airport*

 In its settlement agreement with appellant, Holiday agreed to pay appellant $15,000 and assign to appellant all claims it might have against Airport and Home.[5] Further, Holiday agreed to "submit the issue of [appellant's] damages to the court on evidentiary hearing," and "for the purposes of judicial determination of plaintiff's damages, [to] agree that liability may be found in favor of [appellant] and against Holiday." However, the settlement agreement also contained a covenant not to execute, which stated that aside from the $15,-000, "[appellant] agrees not to seek any additional sums, money, property or compensation from Holiday...." Simply put, Holiday conceded liability for appellant's injuries on the condition that, whatever appellant's total damages were later determined to be, Holiday would not be required to pay more than $15,000.

The October 1982 evidentiary hearing resulted in appellant's damages being set at $246,033.88. The trial court's judgment states: "Plaintiff is given judgment against Holiday Rent–A–Car in the sum of $27,160.65 special damages, and $211,-584.50 general damages together with interest.... The settlement agreement between plaintiff and the said parties is approved." Thus, at the same time it fixed appellant's damages as something of an abstract proposition, the trial court also ratified the covenant not to execute, ensuring that Holiday could not be called upon to contribute more than $15,000 toward the $246,033.88 judgment.

If Holiday had been insured by Home, Home would have been contractually obligated under the insurance policy to cover Holiday for the $15,000 it was obligated to pay under the settlement accord. However, under the terms of the settlement arrangement, Holiday's financial exposure to appellant was capped at $15,000. Airport's breach places Airport in the position of Home and requires Airport to restore Holiday to the condition it would have been in if Home had extended insurance coverage to Holiday. Accordingly, Airport must reimburse Holiday $15,000, just as Home would have done if Holiday had been insured.

 Appellant challenges this method of calculating damages on the ground that, under Utah law, insurance companies are liable for the full amount of unexecuted judgments entered against their insureds. Since Airport's breach requires it to assume the position of Holiday's insurer, appellant claims Airport must be held liable for the full amount of the unexecuted judgment entered against Holiday, even though Holiday was itself not financially liable to that extent.

It is true that Utah recognized an insurer's liability for an unexecuted judgment entered against its insured in *Ammerman v. Farmers Ins. Exch.*, 450 P.2d 460 (Utah 1969). In that case, plaintiff brought suit for injuries suffered in an automobile accident. Before trial, plaintiff offered to settle with defendant's insurance company for $9,000, but the insurance company rejected the offer. The parties then went to trial, and plaintiff received a judgment for $15,-282 against defendant. *See id.* at 461.

Defendant's insurance policy contained a $10,000 coverage limit, and defendant was unable to pay the $5,282 difference between the judgment and the coverage. To secure payment of the full judgment, plaintiff entered into an agreement with defendant whereby plaintiff promised not to execute on the judgment against defendant if

---

**5.** The agreement also contained a provision whereby $10,000 would be refunded to Holiday

if appellant recovered any sum from Airport or Home.

defendant would cooperate in seeking to have the insurance company satisfy the judgment instead. Defendant then sued his insurance company, alleging that the insurer had acted negligently and in bad faith in failing to accept plaintiff's $9,000 pre-trial settlement offer, *see id.*, which was within the policy's limits and thus would not have exposed defendant to personal liability.

The insurer moved for summary judgment, arguing that since the settlement agreement entered into between plaintiff and defendant had discharged defendant's responsibility to pay plaintiff's judgment, defendant had suffered no damages as a result of the insurer's failure to settle. The trial court accepted the insurer's position, and summary judgment was granted. *See id.* On appeal, however, the Utah Supreme Court reversed. Relying heavily upon a Pennsylvania case, *Gray v. Nationwide Mut. Ins. Co.*, 422 Pa. 500, 223 A.2d 8 (1966), the Court held that "prepayment by the insured to the judgment creditor was not a prerequisite to a cause of action against the insurer for the excess judgment," and ruled that the covenant not to execute did not bar defendant's suit. *Ammerman*, 450 P.2d at 462. The Court's adoption of this "non-payment" view was based primarily on the following three policy concerns:

(1) [S]uch view prevents an insurer from benefiting from the impecuniousness of an insured who has a meritorious claim but cannot first pay the judgment imposed upon him; (2) such view negates the possibility that the insurer would be "... less responsive to its trust duties where the insured is [un]able to pay the excess judgment. Were payment the rule, an insurer with an insolvent insured could unreasonably refuse to settle, for, at worst, it would only be liable for the amount specified by the policy. To permit this would be to impair the usefulness of insurance for the poor man" ...; (3) such view recognizes that the fact of entry of the judgment itself against the

insured constitutes a real damage to him because of the potential harm to his credit rating.

*Id.* at 462 (quoting *Gray v. Nationwide*, 223 A.2d at 10). *See Gray v. Nationwide Mut. Ins. Co.*, 207 Pa.Super. 1, 214 A.2d 634, 637 (1965) (Hoffman, J., dissenting); Note, 27 U.Pitt.L.Rev. 726, 728 (1966).

Other jurisdictions have also recognized an insurer's liability for an unexecuted judgment entered against its insured. However, as in *Ammerman*, the policy rationales used by those courts overwhelmingly focus "on the right of the insured to protect himself from bad faith conduct of his insurer.... [S]ome element of misconduct by the insurer generally has been present in the cases [where insurers have been held liable for unexecuted judgments]." *Freeman v. Schmidt Real Estate & Ins.*, 755 F.2d 135, 138 (8th Cir. 1985). "Insureds and injured parties alike may need the possibility of an assignment and covenant not to execute as a weapon against insurer misconduct surrounding claims made under the policy." *Id.* at 139. Such misconduct has been found to include an insurer's refusal to defend an insured, a failure to promptly notify an insured that its coverage is being cancelled, and a refusal to pay a valid claim. *See id.* at 138. *See also Garcia v. American Physicians Ins. Exch.*, 812 S.W.2d 25, 32 (Tex.App.1991).

However, by requesting that we hold Airport liable for the full amount of the unexecuted judgment entered against Holiday, appellant confuses the obligations imposed upon an insurer under a liability insurance policy and the contractual obligation undertaken by Airport under the sublease. Those cases that have held an insurer liable for an unexecuted judgment have done so for one overriding reason: to ensure that insurance companies will make good-faith efforts to fulfill their contractual obligations to defend insureds and pay judgments entered against those insureds. Airport did not accept those contractual obligations—its only duty was to find an insurer who would agree to accept them. *Cf. Pickhover*, 771 P.2d at 669 (characteriz-

ing "an agreement to provide insurance as a matter of simple contract and not as a matter of indemnity"). Therefore, the policy concerns that support holding an insurer liable for an executory judgment entered against its insured do not apply to Airport, whose relevant status is that of a contract breacher, not an insurer. Thus, Airport should not be held liable to Holiday for more than the amount of Holiday's actual damages.[6]

As we have stated, Airport's breach obligates Airport to place Holiday in the same position it would have been in had Airport performed under the sublease agreement. Airport contracted to add Holiday to Airport's liability policy; if Airport had performed that obligation, Home would have been liable to Holiday for the amount of its settlement with appellant, $15,000.[7] Accordingly, Airport is obligated to pay Holiday $15,000, not $246,033.88. To hold otherwise would be contrary to long-recognized principles of contract law, as it would require Airport, as redress for its breach, to pay a sum greatly in excess of Holiday's resulting actual damages.

## CONCLUSION

The trial court correctly held that Holiday was not an insured under Airport's liability policy issued by Home. Thus, Airport breached its agreement to procure insurance for Holiday. Further, Airport was not liable for the unexecuted judgment entered against Holiday since Airport had not contracted to perform as an insurer and its only liability was for the $15,000 actually paid by Holiday to appellant. Accordingly, we affirm.

BILLINGS and JACKSON, JJ., concur.

6. Appellant's position is basically that Airport's liability should be determined as though Airport was an insurer of Holiday who improperly refused to pay up. In our view, Airport's liability should instead be determined with reference to the insurance coverage which actually would have been available to Holiday had Airport performed its contractual obligation. In essence, we treat Airport as a simple contract breacher rather than as an insurer.

7. We are not unmindful that, but for Airport's breach and the resulting uncertainty attending whether there was insurance coverage for Holi-

day, the settlement may never have been capped at $15,000. By the same token, absent a settlement of the sort entered into, appellant's damages would not have been the product of a "sweetheart deal," but would have been determined in an adversarial proceeding in which her claim would have been rigorously scrutinized. However, assuming her litigated damages would have been greater than the $15,000 settlement, appellant would have been better off if she had proceeded like the plaintiff in *Pickhover*, and had not settled with Holiday prior to a final determination of whether Airport breached.