Andrew J. McCLAY and Marjorie J. McClay, individually and in their own right, and Andrew J. McClay, Administrator of the Estate of Barbara L. McClay

v.

**FEDERAL KEMPER INSURANCE COMPANY.**

Civ. A. No. 87–7797.

United States District Court, E.D. Pennsylvania.

Aug. 17, 1988.

Robert G. Rosen, Lansdale, Pa., for plaintiffs.

Dean F. Murtagh, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

VAN ANTWERPEN, District Judge.

This is an action against an insurance carrier seeking a judgment in excess of the policy limits, based on the carrier's alleged bad faith in handling an insurance claim. Defendant Federal Kemper Insurance Company ("Federal") has moved for a summary judgment on the ground of res judicata, collateral estoppel, or both. Federal also seeks sanctions against plaintiffs on the ground of bad faith and violation of Fed.R.Civ.P. 11. For the reasons given below, Federal's motion for summary judgment will be granted and the motion for sanctions denied.

Plaintiffs are the parents and heirs of the late Barbara McClay. In addition, Mr. McClay is the administrator of his daughter's estate. Federal was the insurer of Barbara McClay's automobile.

On October 13, 1982, Federal issued its policy No. RA 67510. The policy named Barbara Lynn McClay as Insured and covered her 1979 Buick Opel. Three days later, at about 3:00 A.M. on October 16, 1982, Barbara McClay sustained fatal injuries in her car, driven by her friend Juan Francisco Reynoso.

Following Barbara's death, the plaintiffs endeavored to settle their liability claim against Mr. Reynoso, and failing in that effort, brought suit in this court on October 12, 1984 under Civil Action No. 84–4925. The case was heard by United States District Judge Louis C. Bechtle, sitting with a jury. Federal defended Mr. Reynoso under the "Covered Person"

clause of the policy. Since Mr. Reynoso maintained that Barbara McClay, not himself, was the driver, the carrier defended on that basis. The jury, on October 1, 1985, brought in a verdict against Mr. Reynoso which was molded by the court by order dated November 14, 1985 into a final verdict of $266,290.29. No appeal was taken by either side. Federal paid plaintiffs a total of $17,472.61 representing the liability limits of the insurance policy plus court costs.

On November 4, 1985, plaintiffs filed a writ of execution and interrogatories on defendant carrier seeking the balance of the judgment, $251,290.29, plus interest from October 1, 1985. Both parties moved for summary judgment and by order filed May 15, 1986, Judge Bechtle granted summary judgment in favor of Federal. Plaintiffs appealed to the United States Court of Appeals for the Third Circuit, which by Judgment Order dated January 29, 1987 (filed in the District Court on March 11, 1987), affirmed the judgment of the District Court. The instant action was brought by plaintiffs in the Court of Common Pleas of Bucks County, No. 87–07125–15–2, by summons filed September 23, 1987, and Complaint filed November 19, 1987. It was removed to this court by Petition for Removal filed by Federal on December 4, 1987. Federal filed its Answer on January 6, 1988, and its Motion for Summary Judgment and Sanctions on May 17, 1988. In both its answer and its motion, Federal has raised the issues of res judicata and collateral estoppel.

I agree with Federal. As the Supreme Court said in *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980): "Under res judicata a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. *Cromwell v. County of Sac.*, 94 U.S. 351, 352 [24 L.Ed. 195 (1876)]." The litigants in this action are the same persons who were involved in Civil Action No. 84–4925. (See page 179). In both the garnishment part of that action and in this action, the claim was the same, the payment of an amount exceeding *six-teen times* the face value of the policy, based on the alleged bad faith of Federal in handling the claim. All possible theories for that claim were raised *or could have been raised* in the garnishment action. Judge Bechtle in his excellent opinion defined the plaintiffs' rights as follows:

"... plaintiffs here can assert only the rights of Reynoso since plaintiffs have acquired Reynoso's rights by way of equitable subrogations. Plaintiffs have acquired no greater rights than those of Reynoso."

At p. 181. Judge Bechtle, had before him all parties to the present action and the full record of the first action, over which he had presided since its inception. Having heard all of the arguments of both sides, he defined the rights of plaintiffs and determined that Federal had not acted in bad faith. That determination governs this action, unless, as they claim, plaintiffs have some right, independent of Francisco Reynoso, under Barbara McClay as owner of or claimant under Federal's insurance policy.

To analyze that claim, I will review the rights and obligations involved here. Barbara McClay, as owner of the car, and Francisco Reynoso, as its driver, each had a common law obligation to see that it was driven safely, and to provide restitution to those harmed if it was not. In addition, Barbara McClay had a statutory obligation under 40 Pa.S.A. § 1009.104 (now repealed), to provide security for such restitution up to $30,000 for each occurrence, and $15,000 for each injured person. Barbara chose to provide such security by contracting with Federal for the minimum amount required by law. After Barbara was killed, an action was brought against Francisco as driver of the car. Federal did what it had contracted to do; it defended Francisco Reynoso and ultimately paid the policy limits. Plaintiffs have failed to cite, and I cannot find, any cases giving the owner of a policy any special rights, independent of the rights of the insured, when the owner of the policy is the claimant rather than being the insured.

Consequently, Judge Bechtle's order in granting summary judgment in favor of

Federal in Civil Action No. 84–4925 governs this action under the principle of res judicata, and summary judgment will be entered in favor of Federal in this action. Judge Bechtle's well-reasoned and comprehensive opinion, which sets forth in detail the facts of this litigation, is attached as an appendix to this memorandum.

No sanctions for violation of Rule 11 will be assessed in this matter, although a similar situation in the future may well result in assessment of sanctions.

### APPENDIX

In the United States District Court

For the Eastern District of Pennsylvania

Andrew J. McClay and Marjorie J. McClay, individually and in their own right, and Andrew J. McClay, Administrator of the Estate of Barbara L. McClay

v.

Juan Francisco Reynoso, a/k/a Frank Reynoso and Kemper Group, d/b/a Federal Kemper Insurance Company

Civ. A. No. 84–4925.

May 15, 1986

### MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the court are cross-motions for summary judgment. For the reasons stated herein, defendant/garnishee Kemper Group, d/b/a Federal Kemper Insurance Company's ("Kemper") motion will be granted and plaintiffs' motion will be denied.

### FACTS

In the early morning hours of October 16, 1982, a 1979 Opel automobile was traveling south on Finland Road in West Rockhill Township, Bucks County, Pennsylvania, when it went off the highway and hit a tree. The car had two occupants, Barbara L. McClay ("McClay") and Juan Francisco Reynoso ("Reynoso"). McClay was killed in the accident. Reynoso survived.

The parents of McClay, on their own behalf, and McClay's father, Andrew McClay, as administrator of the estate of McClay, brought a lawsuit for wrongful death against Reynoso on October 12, 1984. Kemper provided a defense for Reynoso.[1] The principle issue in this trial was whether Reynoso or McClay was driving the Opel at the time of the accident. On the one hand, Reynoso contended that he was the passenger and McClay was the driver. At the scene of the accident Reynoso told Investigating Police Officer William McGlinchey and Chief of Police Frederick Crean, Jr. ("Crean") that McClay was the driver. The following day at the police station Reynoso restated to Crean that McClay was the driver. These statements were included in police reports. Again, on March 4, 1985, Reynoso told Kemper, which had assumed the defense of the lawsuit against Reynoso, that McClay was driving at the time of the accident. The March 4, 1985 statement was taped with Reynoso's permission. Again, at his deposition on March 17, 1985, and at trial in September, 1985, Reynoso maintained that McClay was the driver of the car.

On the other hand, plaintiff presented evidence that at the scene of the accident Reynoso told paramedic Owen Hunter Siegel that Reynoso was the driver and McClay was the passenger. This statement was included in the paramedic's report. In addition, plaintiff offered the

---

1. McClay's Opel was insured by Kemper. The policy provided, in pertinent part, as follows:

> We will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted.
> "Covered person" ... means:

. . . . .

2. Any person using your covered auto.

. . . . .

Insurance Policy of Barbara Lynn McClay, Federal Kemper Insurance Company, Policy No. RA67–510, Simplified Automobile Policy, Part I.

In this case, Reynoso was, as the jury found, the driver. Thus, Reynoso was a covered person under the insurance policy. Kemper had the duty to defend or settle any suit against Reynoso with respect to the October 16, 1982 automobile accident.

post-mortem report and testimony of Dr. Halbert E. Fillinger, Jr. ("Fillinger"), the Coroner of Bucks County and the person who performed the autopsy on McClay. Fillinger concluded that Reynoso was the driver. In reaching this conclusion, Fillinger relied on statements that McClay's body was found in the passenger seat, the type and location of McClay's injuries, and the absence of brake or accelerator pedal marks on McClay's shoes.

The case was tried before a jury in September, 1985, and on October 1, 1985, the jury, finding that Reynoso was the driver and was negligent, rendered a verdict and judgment for plaintiffs. The judgment was molded to a total sum of $266,290.29. On November 4, 1985, plaintiffs filed a writ of execution and interrogatories on Kemper. By filing these documents plaintiffs initiated this lawsuit against Kemper for breach of its duty of good faith.

Plaintiffs' position is that Kemper did not investigate, consider, and settle plaintiffs' claim in good faith. Kemper was contacted several times by plaintiffs' attorneys to settle the claim against Reynoso. In particular, Robert Rosen, Esquire ("Rosen") contacted Kemper by telephone and letter on August 29, 1983, September 23, 1983, and October 14, 1983. On each of those occasions Rosen made demand for full payment of the policy limits on the uninsured motorist coverage and the full wage loss. Kemper did not respond to any of these offers until March 7, 1985, when Kemper offered to settle the case against Reynoso for $15,000.00, the amount of the full wage loss policy limits.

The court does not know the extent of Kemper's effort to find Reynoso between the time of the accident and March 4, 1985, when Kemper took the recorded statement. The court believes that Reynoso would not have been easy to find as the record suggests that Reynoso did not seem to have a stable residence. Nevertheless, the court will assume for purposes of Kemper's motion that Kemper did not make a serious attempt to locate Reynoso until March, 1985.

Kemper, moving for summary judgment, argues that under Pennsylvania law the duty of good faith extends only between the insurance company and the insured. Here, the insurance policy issued by Kemper only covered the Opel. Under the policy, if McClay was driving, she was covered by the policy under the uninsured motorist provision. If Reynoso was driving, he was a permissive user and was covered as an additional insured. Kemper asserts that since Reynoso was the insured and since Reynoso has consistently maintained that he was driving, Reynoso could not now sue Kemper for breach of good faith. As a result, according to Kemper, plaintiffs, who stand in the shoes of Reynoso as equitable subrogees, cannot maintain an action against Kemper for breach of good faith.

DISCUSSION

A motion for summary judgment must be granted if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

Pennsylvania recognizes a claim for bad faith against insurance companies. *Cowden v. Aetna Casualty & Surety Co.*, 389 Pa. 459, 134 A.2d 223 (1957). Underlying the bad faith claim is the principle that, arising from the insurance contract, there is a contractual duty between the insurer and the insured to act in good faith. *Gray v. Nationwide Mutual Insurance Co.*, 422 Pa. 500, 223 A.2d 8 (1966).

Recently the United States Court of Appeals for the Third Circuit declared that in Pennsylvania the duty of good faith is between only the insured and the insurer. *Puritan Insurance Co. v. Canadian Universal Insurance Co.*, 775 F.2d 76 (3d Cir. 1985). In that case the insured bore no risk of liability. The risk was carried by the insured's primary insurer and the insured's excess insurer. The primary insurer and the insured wanted to try the case. The excess insurer, who bore the risk of the lion's share of liability, wanted to settle the case. The case was tried and the jury awarded plaintiff $1,413,152.25. The case was later settled for $1,350,000.00. The excess insurer was, thus, liable for $850,000.00. Subsequently, the excess insurer

sued the primary insurer for $850,000.00 plus punitive damages. The third circuit held that the primary insurer did not owe a direct duty of good faith to the excess insurer. 775 F.2d at 79.

Similarly, the appellate courts in Pennsylvania have expressly stated that the duty of good faith only runs between the insurer and the insured. The Supreme Court of Pennsylvania has stated, in pertinent part:

[B]y asserting in the policy the right to handle all claims against the insured, including the right to make a binding settlement, the insurer assumes a fiduciary position towards [sic] the insured and becomes obligated to act in good faith and with due care in representing the interests of the insured. If the insurer is derelict in his duty, as where it negligently investigates the claim or unreasonably refuses an offer of settlement, it may be liable regardless of the limits of the policy for the entire amount of the judgment secured against the insured. *Gedeon v. State Farm Mutual Automobile Insurance Company,* 410 Pa. 55, 59, 188 A.2d 320, 322 (1963).

*Gray v. Nationwide Mutual Insurance Company,* 422 Pa. 500, 504, 223 A.2d 8, 9–10 (1966). *See Shearer v. Reed,* 286 Pa. Super. 188, 428 A.2d 635 (1981).

Consequently, under Pennsylvania law, plaintiffs here can assert only the rights of Reynoso since plaintiffs have acquired Reynoso's rights by way of equitable subrogation. Plaintiffs have acquired no greater rights than those of Reynoso. As a result, plaintiffs can recover under their bad faith claim only if Reynoso could have recovered from Kemper if Reynoso had brought this lawsuit.

Clearly Reynoso could not maintain a bad faith claim against Kemper. At the scene of the accident Reynoso stated that McClay was driving the car. In a taped telephone interview, Reynoso told Kemper that McClay was driving. At a deposition and at trial, under oath, Reynoso testified that McClay was the driver of the car. Reynoso could not contend, now that his credibility has been tested at trial and a jury has found against him, that Kemper acted in bad faith by not settling this lawsuit.

Similarly, plaintiffs, Reynoso's equitable subrogees, cannot recover from Kemper for bad faith.

To the extent that plaintiffs argue that Kemper acted in bad faith towards plaintiffs, plaintiffs cannot prevail. Plaintiffs were not the insured in this litigation and, as such, Kemper did not owe plaintiffs a direct duty of good faith. Consequently, since no direct duty of good faith runs between Kemper and plaintiffs, the evidence proffered by plaintiffs that Kemper acted in bad faith toward plaintiffs is irrelevant.

CONCLUSION

For the reasons stated in the foregoing Memorandum, Kemper's motion will be granted and plaintiffs' motion will be denied.

An appropriate Order will be entered.

ORDER

AND NOW, TO WIT, this 15th day of May, 1986, for the reasons stated in the accompanying Memorandum, IT IS ORDERED as follows:

1. Kemper Group, d/b/a Federal Kemper Insurance Company's motion for summary judgment is *granted;* and

2. Plaintiffs' motion for summary judgment is *denied.*