487 P.2d 826 (1971)
Fred M. HART, Plaintiff in Error,
v.
DOMINION INSURANCE COMPANY LIMITED, a corporation, organized under the laws of England, Defendant in Error.
No. 71-065. (Supreme Court No. 24451.)
Colorado Court of Appeals, Div. I.
April 27, 1971.
Rehearing Denied May 18, 1971.
Certiorari Granted August 23, 1971.
*827 Maley & Schiff, a professional company, Robert A. Schiff, Denver, for plaintiff in error.
Blunk & Johnson, Robert Z. Bohan, Denver, for defendant in error.
Selected for Official Publication.
COYTE, Judge.
This case was transferred from the Supreme Court pursuant to statute.
This is an appeal by the plaintiff from a dismissal of his complaint wherein he sought recovery under an insurance policy issued by the defendant.
The facts are these: Plaintiff is a former airlines pilot. He claims to be insured by the defendant insurance company for $15,000 should he suffer injuries which would incapacitate and prevent him from fulfilling his duties as a pilot. He alleges that in March 1967 while flying an aircraft over Wyoming, he was compelled to execute evasive maneuvers, resulting in injuries to his back, shoulders and neck. He further alleges that the Federal Aviation Administration refused to renew his first class pilot's license in July 1967 because of these injuries.
Pursuant to the policy provisions, plaintiff requested payment of the $15,000 in September 1967. By letter dated May 1968, defendant's adjusters advised plaintiff that they wished him examined by a doctor of their own choosing pursuant to paragraph 1 of the policy, which states the insured:
"shall, if required by the company so to do, submit to an independent medical examination at the expense of the Company for the purpose of ascertaining the nature of the personal injury or illness in question; * * *"
Accordingly, plaintiff was advised that a Dr. Carter of the Mayo Clinic located in *828 Rochester, Minnesota, was the physician of their choice.
Plaintiff replied by letter dated July 25, 1968, that he was unwilling to travel to Minnesota for a medical examination, but that he was willing to submit to an examination by any doctor located in the Denver area. In addition, plaintiff requested arbitration pursuant to Condition 1 of the policy, which is designated as a condition precedent to recovery. The pertinent wording of the policy provision is:
"1. Permanent Incapacity of the Member. The incapacity of the Member to act in the capacity for which he holds his said Pilot's License shall be deemed to be permanent if, * * * a panel of medical referees * * * one to be nominated by the Company, one by the Air Lines Pilots Association, International, on behalf of the Member, with an Umpire appointed by such nominees * * * certify that in their opinion the member is unlikely to be able again to obtain validation of his said Pilot's License. * * *"
In answer to this request for arbitration, the defendant by letter dated September 11, 1968, requested the identity of the physician who was to act on behalf of the plaintiff as his medical referee. In response, a Denver physician was named by plaintiff as his choice for the arbitration panel.
By letter dated October 1, 1968, the defendant informed the plaintiff that Dr. Carter of the Mayo Clinic was appointed as medical referee to act on behalf of the defendant. This same letter requested plaintiff's referee to contact Dr. Carter concerning plaintiff's claim.
This was done November 19, 1968, when plaintiff's medical referee contacted Dr. Carter by letter. In this letter, Dr. Carter was informed that hearings on this claim should be held and because the plaintiff and most of the witnesses lived in the Denver area, it was suggested that the hearings be held in Denver.
Dr. Carter responded by letter dated November 22, 1968, in which he stated:
"Also, it has been general clinic policy that members of the staff here do not travel from the clinic for purposes of taking part in legal hearings. Rather, the usual procedure is to give a deposition under oath here on the premises subsequent to our direct evaluation of the patient.
Evidently Mr. Hart does not wish to come here for an evaluation and, accordingly, I am afraid I would be of little value in hearings planned in Denver."
In December 1968 plaintiff initiated this suit, reciting the above facts and requesting payment of the insurance proceeds. Defendant answered generally denying plaintiff's claim and affirmatively alleging failure of the plaintiff to comply with the conditions precedent to the policy; namely, the carrying out of the mandatory arbitration procedures. With trial on the issue scheduled for September 29, 1969, defendant moved, on September 11, 1969, to dismiss plaintiff's complaint on the grounds that the arbitration procedures had not been complied with, and that another medical referee, located in Denver, had been designated by the defendant. The trial court ordered dismissal of this suit, and in so doing stated that, while the plaintiff was not required to go to Rochester, Minnesota, or leave the state for a medical examination as demanded by defendant, the arbitration provisions of the policy had not been complied with, and since the defendant had designated a medical referee in Denver, this provision should be carried out before the court would take jurisdiction of the matter.
On appeal, plaintiff contends that a failure of arbitration had occurred and that he was entitled to proceed to trial on the merits of his case. We agree.
Throughout the proceedings, by its answer and motions to dismiss, defendant claimed that the plaintiff had failed to comply with the mandatory arbitration proceedings, which it pointed out were designated as conditions precedent to recovery. Yet, the various communications between *829 the parties in this case reveal no such failure on the part of plaintiff, but do reveal a failure on the part of the defendant. Plaintiff's letter of July 1968 was clearly a demand for arbitration. Upon request plaintiff designated a medical referee to arbitrate on his behalf.
Therefore, as of October 1968, plaintiff was ready and willing to arbitrate and had fully complied with the requirements of the contract. It was necessary for defendant to appoint a referee, which it did by naming Dr. Carter according to its letter of October 1968. However, when contacted by plaintiff's referee for a mutually agreeable time to conduct the hearings, Dr. Carter stated that he would not leave Minnesota to participate in legal hearings, but would merely submit a deposition concerning his medical evaluation of plaintiff, after plaintiff came to Minnesota and was examined. According to Dr. Carter's letter, however, he was only willing to state his personal evaluation of plaintiff, and would not participate further in the arbitration procedures as a medical referee.
In essence, the defendant's designated referee stated that while willing to give testimony (through a deposition) as a witness, he was not willing to act as a referee in this matter. This becomes obvious in view of the fact that according to the policy the two designated referees were to appoint an umpire, then, as a panel, reach a conclusion as to the medical fitness of the plaintiff. We must conclude that the arbitration clause invoked by plaintiff was breached by defendant when its appointed referee refused to participate in these hearings.
If a contract provides for arbitration, the general rule is that arbitration must be submitted to by the parties before the courts will contemplate action in the case. Zahn v. District Court, etc., Colo., 457 P.2d 387. In Zahn, supra, dismissal was proper because the plaintiffs had refused to comply with the arbitration proceedings before commencement of their suit.
But here the reverse is true because, while plaintiff did comply with all the procedures, for arbitration, it was defendant who failed to perform by its referee's refusal to participate in the hearings. Under the general rules of contracts, where there exists a condition precedent to be performed before liability attaches and this condition precedent is not performed, not through any fault of plaintiff but rather because of the defendant's failure to perform, the plaintiff may consider the condition waived, and refuse on his own part to perform. 4 A. CorbinContracts § 767. Note also the language in Zahn, supra, which recites:
"[T]he arbitration clause in the instant case, being clear and unambiguous in its terms, requires the contracting parties in the absence of matters such as waiver and estoppel (which have not been raised in the record here before us)to submit to arbitration. * * *"
In the present case the elements of waiver are present and have been raised in the record before this court. A clear demand for arbitration coupled with the appointment of a referee established plaintiff's compliance with the contractual provisions. Defendant's failure to arbitrate by reason of Dr. Carter's refusal to participate is not cured by the appointment of a new referee ten months later, just before trial on plaintiff's complaint. As succinctly stated in 14 G. Couch, Cyclopedia of Insurance Law, § 50:87 (2d ed.)
"When a party receives a proper demand or notice for arbitration he must cooperate and proceed therewith, under penalty, for failing to do so, of being deemed to have waived the right to such arbitration or appraisal. Thus failure of the insurer to act, after having been requested to do so, waives arbitration. A fortiorari, where a condition in a policy makes arbitration of loss a condition precedent to suit, and the insured, after loss, demands arbitration, which is refused by the insurer, such refusal constitutes a waiver of arbitration, and the insurer *830 is estopped from insisting upon arbitration or from setting up a failure to arbitrate as a defense in an action to cover the loss." (Footnotes omitted.)
We hold the trial court erred in this instance by failing to hold that the defendant had waived this condition precedent by its actions. Consequently we must remand for trial on the issues.
Since the question of place of physical examination will most likely be before the trial judge, we will pass on the right of plaintiff to refuse to go to Minnesota for a medical examination. The trial court held, and we agree, that the plaintiff did not have to leave Colorado.
The authorities on this point are scarce, and none appears in Colorado. It is clear however, that provisions such as this requiring submission to a medical examination are valid, provided they are reasonable. But, merely because an insurance company may require the insured to submit to an examination does not necessarily mean that this examination must take place at any time or place chosen by the insurance company. Deery v. Jefferson Standard Life Ins. Co., 174 S.C. 63, 176 S.E. 876. To so hold might be to allow a company to set up such unreasonable requirements as would defeat the insured's right to recover. Unless some compelling reason is presented, it would appear to be unreasonable to require plaintiff in this case to travel over one thousand miles for a medical examination. The trial court correctly exercised its discretion in refusing defendant's demand that plaintiff travel to Minnesota for this examination.
Plaintiff asserts that he is entitled to a summary judgment on the grounds that his physical disability is conclusive upon the defendant once the Federal Aviation Administration has refused his application for a pilot's license. We disagree. The policy itself clearly provides that before liability occurs there must be an independent determination that the disability of the plaintiff is permanent and will prevent future renewal of his license. Not only does defendant dispute plaintiff's disability, but by amended answer it claims that the plaintiff had misrepresented the state of his health before applying for insurance and that therefore the claim was unenforceable. These contentions all present questions of fact which cannot be resolved in a motion for summary judgment.
Judgment reversed and remanded with instruction that the case proceed to trial on the merits.
DWYER and PIERCE, JJ., concur.