Burt M. RICHMOND,
Plaintiff–Appellant,

v.

Joseph GRABOWSKI d/b/a Bluebird Mountain Designs; and Christopher's Plumbing, Inc., a Colorado corporation, Defendants–Appellees.

No. 88CA0956.

Colorado Court of Appeals,
Div. IV.

Sept. 21, 1989.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const., art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. (1988 Repl.Vol. 10B).

Calkins, Kramer, Grimshaw & Harring, Charles L. Fife, Frederick Huff, Charles B. Hecht, Denver, for plaintiff-appellant.

Hall & Evans, Alan Epstein, Denver, for defendant-appellee Joseph Grabowski.

White and Steele, Robert R. Carlson, Michael W. Anderson, Denver, for defendant-appellee Christopher's Plumbing, Inc.

FISCHBACH, Judge.

Plaintiff, Burt M. Richmond (owner), sought recovery from defendants, Joseph Grabowski (contractor) and Christopher's Plumbing, Inc. (subcontractor), for fire damages to his house allegedly caused by defendants' negligence. The trial court granted summary judgment for defendants, holding that owner's breach of his contractual obligation to buy fire insurance on the premises precluded recovery. We affirm.

The owner and contractor had entered into a short form AIA construction contract (AIA Document A101, intended to be but not used with AIA Document A201) for demolition and construction work on own-

er's house. In pertinent part, the contract provided as follows:

"17.3 Unless otherwise provided, the owner shall purchase and maintain property insurance upon the entire work at the site to the full insurable value thereof. This insurance shall include the interests of the Owner, the Contractor, Subcontractors ... in the work and shall insure against the perils of fire....

"17.5 The Owner shall file a copy of all policies with the Contractor before an exposure to loss may occur.

"17.6 The Owner and Contractor waive all rights against each other for damages caused by fire or other perils to the extent covered by insurance obtained pursuant to this Article or any other property insurance applicable to the work...."

The owner agrees that these contractual provisions required him to obtain insurance. He further agrees that, if he had purchased insurance, he would have waived his rights for damages against the defendants. However, he argues, because the contractor began work before receiving copies of the policies pursuant to paragraph 17.5 of the contract, the contract waived and/or is estopped from asserting the contractual requirement as a matter of either law or fact by proceeding despite the lack of insurance. We do not agree.

## I.

▇ To prevail under a theory of waiver, the owner must show that the contractor expressly or by clear implication relinquished a known right. *Duran v. Housing Authority,* 761 P.2d 180 (Colo.1988).

### A.

▇ In contract, waiver as a matter of law may occur when the contract establishes that an obligation by one party is a condition precedent to that of the other, and it is undisputed that the latter has proceeded in spite of the former's failure to fulfill the condition. *See Hart v. Dominion Insurance Co.,* 29 Colo.App. 404, 487 P.2d 826 (1971), *rev'd on other grounds,* 178 Colo. 451, 498 P.2d 1138 (1972); *see also Duran v. Housing Authority, supra.*

Here, the owner asserts, in effect, that his delivery of copies of the insurance policies to the contractor was a condition precedent to the contractor's duty to proceed with construction and that, therefore, waiver occurred as a matter of law.

Contrary to the owner's assertion, however, paragraph 17.5 does not establish that the contractor is not to begin work until he has received copies of the insurance policy, but rather imposes an obligation upon the owner to provide the requisite insurance before an exposure to loss may occur because of work progressing under the contract.

The provision can best be understood in context. *See Horton–Cavey Realty Co. v. Spencer,* 37 Colo.App. 96, 544 P.2d 998 (1975). Paragraphs 17.2–17.5 establish that the provision at issue relates to the owner's obligation to procure insurance and the resultant rights of the contractor and subcontractor. These paragraphs appear to create an abbreviated version of those in *Steamboat Development Corp. v. Bacjac Industries, Inc.,* 701 P.2d 127 (Colo. App.1985), in which we held that an owner who breached his contract by failing to obtain insurance or to notify the contractor of such failure could not recover from the contractor for fire damage.

▇ Both the *Steamboat Development* contract and the contract between the owner and contractor here unequivocally require the owner to get fire insurance. The purpose of such insurance is to shift the risk of loss away from the parties to the contract and to place it on an insurer. *Steamboat Development v. Bacjac, supra.* In general, the party who agrees to procure the insurance and fails to do so assumes the position of the insurer and, thus, the risk of loss. 16A J. Appleman, *Insurance Law & Practice* § 8840 (1981).

Unlike the contract in *Steamboat Development*—which provided an option for the owner not to buy insurance, and thus relinquish the risk of loss, if he so notified the contractor prior to the commencement of work—here, no option is given to the owner

not to purchase the insurance or bear the risk.

■ Paragraph 17.5, any equivalent of which is not discussed in *Steamboat Development,* neither affects the owner's obligation to purchase insurance and bear the risk of loss, nor gives the contractor notice that insurance does not exist. Rather, the provision describes the owner's duty to file copies of the insurance policies with the contractor before the contractor may be exposed to loss. Reading the contract as a whole, we conclude that the only rational objective of this filing requirement is to inform the contractor as to the extent of . insurance coverage so that he may buy other or additional insurance if deemed necessary to protect himself and his subcontractors from any ensuing risk of loss.

The owner's assertion that "exposure to loss" means "commencement of work" is refuted not only by analysis of the term in context, as described above, but also by the fact that use of the specific term "commencement of work" elsewhere in the contract confirms that the parties intended a distinction between the two terms. (*See, e.g.,* Article 3: "The work to be performed under this contract shall be commenced as soon as a building permit is secured.... Substantial completion shall be achieved not later than 3 months from commencement of work.")

Therefore, we conclude that paragraph 17.5 is not a condition precedent to the contractor's commencement of work and that the contractor did not, as a matter of law, waive his reliance on the owner's obligation to buy insurance by proceeding with the project.

### B.

Nor do we agree with the owner that summary judgment for the contractor was error because a disputed issue exists as to whether the contractor, as a matter of fact, waived his right to rely on the owner's obligation to buy insurance.

■ For waiver to be implied by conduct, the conduct should be free from ambiguity and clearly manifest the intention not to assert the benefit. *Department of Health v. Donahue,* 690 P.2d 243 (Colo. 1984). In the context of the present case, the contractor's action in beginning work cannot unambiguously manifest an intention to relieve the owner of his obligation to purchase insurance unless the contractor, upon commencement of work, knew that there was no insurance on the property.

The owner alleges in the relevant portion of his complaint only that: "Work was begun by the contractor without fire or other all-risk insurance policies in place. Under Article 17 the contractor's decision to go forward without policies in place was a breach of contract." No affidavits were attached to the summary judgment motions. Even accepting the pleadings as true, we conclude there is no evidence that the contractor knew that no insurance had been purchased and that he, therefore, should secure it himself. Thus, no disputed issue of fact exists as to whether waiver could be established.

### II.

For the same reasons, the contractor is not estopped from asserting that it was the owner's duty to obtain insurance.

■ Estoppel cannot be relied on unless, among other elements, the party to be estopped knows the facts. *Department of Health v. Donahue, supra.* Since here there is not even an assertion that the contractor knew there was no insurance, his commencement of work cannot form the basis for an estoppel.

### III.

■ The owner also contends that the trial court erred in granting summary judgment for the subcontractor because a disputed issue of fact exists as to whether the subcontractor was a beneficiary of the owner's obligation to purchase insurance. We conclude, however, that the express words of the contract, which state that "the insurance shall include the interest of the Owner, the Contractor, Subcontractor ... and their work," include the subcon-

tractor as a beneficiary of the owner's insurance obligation.

Judgment affirmed.

TURSI and DUBOFSKY, JJ., concur.