23CA2094 Elite Storage v Dan Brennan 12-12-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA2094
Weld County District Court No. 21CV30550
Honorable Shannon D. Lyons, Judge

Elite Storage Holdings, LLC, a Colorado limited liability company,

Plaintiff-Appellant,

v.

Dan Brennan, LLC, a Colorado limited liability company,

Defendant-Appellee.

JUDGMENT AFFIRMED AND CASE REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE SCHUTZ
Tow and Pawar, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 12, 2024

Nelson Mullins Riley & Scarborough, LLP, Blake A. Gansborg, Denver,
Colorado; Nelson Mullins Riley & Scarborough, LLP, Terrance W. Anderson, Jr.,
Boca Raton, Florida, for Plaintiff-Appellant

Flanders, Elsberg, Herber & Dunn, LLC, Mark A. Herber, Andrew N. Dunkin,
Longmont, Colorado, for Defendant-Appellee

¶ 1     Elite Storage Holdings, LLC (Elite) appeals the trial court's judgment on its breach of contract claims brought against Dan Brennan, LLC (Brennan).  We affirm the judgment and remand the case so that the trial court may determine and award Brennan its reasonable attorney fees incurred on appeal.

## I.     Background

¶ 2     After a bench trial, the court made findings of fact and conclusions of law that reveal the following.

¶ 3     Dan Brennan was the sole member and manager of Brennan, LLC and sole shareholder of Highway 85 Self-Storage, Inc. (Highway 85).  Highway 85 owned and operated a self-storage business, and Brennan owns the land on which the business is located.

¶ 4     Cory Herman-Calvin (Calvin[1]) owned several companies. While the parties negotiated the contracts in question, he created and became the sole member and manager of Elite.

---

[1] During his testimony at trial, Calvin gave his legal name as Cory Herman-Calvin.  However, throughout proceedings at the trial court, and the briefs and oral argument to this court, he was referred to by all parties as Cory Calvin.  We adopt this convention.

¶ 5     Brennan, Highway 85, and Elite[2] entered into contracts for Elite to purchase both the assets of Highway 85 and the associated land.  The sale was divided into two contracts: one for the purchase of the self-storage business, called the Asset Purchase Agreement (APA); the second for the land purchase, called the Purchase and Sale Agreement (PSA).  Each contract included a purchase price of $4 million, for a combined purchase price of $8 million, with $1.6 million due from Elite at closing.  Although the purchase price was divided equally between both transactions — apparently for tax purposes — the vast majority of the value encompassed by the combined purchase price was attributed to the land.

¶ 6     The parties spent months completing the contractually required delivery of documents and due diligence.  The PSA contained a sixty-day inspection period, during which Brennan was required to deliver specific documents and information to Elite.

¶ 7     The contracts specified that the closing date was to be held within thirty days of the completion of the inspection period.  Elite had the right to extend the closing date by one day for each day

---

[2] The rights associated with the subject contracts are Elite's only asset.

that Brennan delayed providing the specified documents. Elite also had the right to delay the closing period one time for a period not to exceed sixty days. The contracts contained no mechanism by which the inspection period could be reopened once it was closed without objection.

¶ 8     During the inspection period, Elite made two objections. First, it asserted that Brennan had not provided three specified documents. Brennan later provided those documents, and Elite made no further objection with respect to them.

¶ 9     Second, Elite objected to an unresolved dispute related a thirty-foot access easement on the property. Because the easement issue needed to be resolved, the parties extended the inspection period multiple times, with the final amendment stating that the inspection period would end the earlier of June 15, 2021, or the date a new easement was recorded.

¶ 10    Because the parties could not close until the inspection period was finished, the closing date was moved each time the inspection period was extended. A mutually acceptable revised easement was recorded on June 24, 2021. Thus, the inspection period ended on

June 15, 2021.  By mutual agreement, the parties set a closing date of July 19, 2021.

¶ 11    During the prolonged inspection period, Calvin attempted to raise funds to close the contracts.  He eventually obtained investor support, but then told the investors that he did not intend to go through with the purchases.  Instead, he moved forward alone.

¶ 12    The night before the scheduled closing, Calvin informed Brennan that Elite would not be going through with closing on either contract, raising several purportedly unresolved issues.

¶ 13    Elite failed to close as scheduled, even though Brennan and Highway 85 were ready, willing, and able to close.  The trial court found that on July 19, 2021, Elite did not have the funds necessary to close the purchase.

¶ 14    Elite initially sued Brennan and Highway 85 for breach of the APA and PSA, requesting specific performance and declaratory relief.  Elite subsequently dismissed its claims against Highway 85 under the APA but continued the suit against Brennan for enforcement of the PSA, demanding that he be allowed to purchase the land for $4 million.

¶ 15    Upon completion of the trial, the court entered findings of fact and conclusions of law by which it rejected Elite's claims and entered judgment in favor of Brennan.  The court subsequently awarded Brennan its costs and attorney fees incurred in the trial court pursuant to the PSA's prevailing party attorney fees provision. Elite now appeals the trial court's judgment.

## II.    Analysis

### A.    Trial Court's Adoption of Proposed Findings and Conclusions

¶ 16    Elite initially argues that the trial court adopted Brennan's proposed findings of fact and conclusions of law "without modification" and later in the brief asserts that the trial's court's order was "virtually unchanged" from what Brennan submitted. Despite the conflicting language, we understand Elite's argument to be that the trial court basically adopted Brennan's proposed findings and conclusions without adequate consideration.  Based on this contention, Elite argues that we should apply heightened scrutiny in reviewing the trial court's findings of fact.

¶ 17    Brennan concedes that the trial court adopted its proposed findings and conclusion in large part, but notes that the court also

made material changes before entering its findings of fact and conclusions of law.

¶ 18     We review a trial court's conclusions of law de novo. *People v. Owen*, 122 P.3d 1006, 1007 (Colo. App. 2005).  The interpretation of a contract generally presents a question of law that we also review de novo. *Gagne v. Gagne*, 2019 COA 42, ¶ 41.

¶ 19     Typically, we defer to a trial court's factual findings, reviewing them only for clear error. *Id.* at ¶ 17.  However, if a trial court adopts a party's proposed findings and conclusions verbatim, those findings and conclusions are subjected to heightened scrutiny. *Trask v. Nozisko*, 134 P.3d 544, 548-49 (Colo. App. 2006); *Uptime Corp. v Colo. Rsch. Corp.*, 420 P.2d 232, 235 (Colo. 1966).  Although a district court has discretion to direct one or more parties to craft proposed findings of fact and conclusions of law, *see* C.R.C.P. 121, § 1-16; *Aztec Mins. Corp. v. State*, 987 P.2d 895, 899 (Colo. App. 1999), the court should not adopt those findings "without apparent review," *Trask*, 134 P.3d at 549.  After all, "[t]he task of the trial court is not limited to picking winners and losers." *Trask*, 134 P.3d at 549.

¶ 20    When reviewing whether there is evidentiary support for the trial court's factual findings, our job is not to reweigh the evidence or the credibility of witnesses. *People v. Poe*, 2012 COA 166, ¶ 14. Nor is it our role to act as an independent fact finder to determine how we would have resolved the disputed evidence if we were sitting in the fact finder's chair. *See People v. Harrison*, 2020 CO 57, ¶ 33 ("An appellate court may not serve as a thirteenth juror and consider whether it might have reached a different conclusion than the jury."). Indeed, compared to appellate courts, trial court judges are uniquely situated to determine the credibility of witnesses and their testimony. *See Owners Ins. Co. v. Dakota Station II Condo. Ass'n*, 2021 COA 114, ¶ 50. ("It's the trial court's sole province to resolve factual issues, determine witness credibility, weigh evidence, and make reasonable inferences from that evidence."). These venerable standards are applicable whether our review of the factual findings is made through the lens of the traditional clear error standard or heightened scrutiny.

¶ 21    In this case, the trial court did not adopt Brennan's proposed findings of fact and conclusions of law verbatim. Our review of the proposed and issued documents confirms that they are indeed

substantially similar. But the trial court clearly reviewed and modified Brennan's proposed findings and conclusions before issuing its own findings of fact and conclusions of law. For example, it added a number of paragraphs, modified some proposed findings, and deleted others.

¶ 22 Given the trial court's edits and substantive additions and deletions, we conclude the court sufficiently considered the proposed findings and conclusions and, thus, no heightened scrutiny on our part is required.

## B. Breach of Contract Claims

¶ 23 At trial, Elite contended that the inspection period had not yet concluded when it informed Brennan that it would not close because Brennan had failed to provide several material documents. Specifically, Elite noted that, despite its specific request, Brennan had not provided it copies of fully executed advertising contracts for two billboards located on the property, and all certificates of occupancy for the property. Elite also claimed that the easement and related property description remained outstanding issues at the time of the scheduled closing.

## 1.    Standard of Review and Applicable Law

¶ 24    A breach of contract claim requires proof of a contract, performance by the plaintiff or a justification for nonperformance, failure to perform by the defendant, and resulting damages to the plaintiff.  *Marquardt v. Perry*, 200 P.3d 1126, 1129 (Colo. App. 2008).

¶ 25    Interpretation of an unambiguous contract presents a question of law that we review de novo.  *Pres. at the Fort, Ltd. v. Prudential Huntoon Paige Assocs.*, 129 P.3d 1015, 1017-18 (Colo. App. 2004).  The scope of the parties' respective duties and obligations is controlled by the language of the contract.  *See Sims v. Sperry*, 835 P.2d 565, 571 (Colo. App. 1992) ("In accord with the rules of contract interpretation, we look to the [contract] language to determine the rights and obligations of the parties.").  Interpretation of a contract is a question of law that we review de novo.  *French v. Centura Health Corp.*, 2022 CO 20, ¶ 24 (citing *Fed. Deposit Ins. Corp. v. Fisher*, 2013 COA 5 ¶ 9).  In interpreting a contract, our primary goal is to determine and give effect to the parties' intent.  *Id* at ¶ 25.

## 2. Inspection Period

¶ 26 Elite attempts to explain and excuse its failure to timely close on the contracts by arguing that Brennan did not deliver several material documents. Based on these alleged failures, Elite argues that it had the right to extend the closing date indefinitely and was therefore not in breach of the PSA.

¶ 27 In contrast, Brennan argues that the timely objections Elite made before the close of the inspection period and setting of the closing date were adequately addressed. Brennan also argues that the additional claims of non-delivery or breach asserted after the closing date were pretextual attempts to excuse its failure to timely close the purchase.

¶ 28 We address the parties' specific contentions, and the trial court's findings with respect thereto, more fully below.

## 3. Billboard Contracts

¶ 29 Section 5(A)(1) of the PSA required Brennan to deliver to Elite "fully executed copies of all storage contracts, [and] all other contracts to include the billboard contracts." Elite contends that Brennan never provided fully executed copies of the leases between Highway 85 and the company that owns the two billboards. It

argues that obtaining fully executed copies of the leases was a material term of the PSA because they represented a material amount of revenue for the storage business and property and that signed leases would be critical to any action to enforce them.

¶ 30 Brennan counters that it was only obligated to produce that which existed, that the income associated with the leases was not material to the operation of the business, and that the lessor had been paying rent pursuant to the lease for the previous three years. Brennan also notes that Elite first raised the absence of signed leases over a year after the scheduled closing and its filing of this lawsuit. In short, Brennan argues that Elite raised the absence of signed billboard leases as a pretext to justify its failure to timely close on the contracts.

¶ 31 The trial court found Brennan leased the two billboards to an advertising company, but that the leases provided minimal income. The trial court also found Brennan provided the original lease that it had in its possession at the time of delivery. Those documents had Dan Brennan's signature, but not a signature for the representative from the advertising company.

¶ 32     The trial court found there was no evidence that fully executed contracts had ever existed.  The court also found that Elite never objected to the billboard contract documents delivered, did not notify Brennan that the leases were incomplete, or list the billboard leases as a reason for its refusal to close.

¶ 33     We conclude that the trial court's findings on this issue are supported by the record and that its related legal conclusions were correct.  The lease agreements admitted at trial listed the annual rent for each billboard as $1,875.00 and $3,000.00.  Those documents also clearly show only Dan Brennan's signature on the leases.  Fully executed copies were not offered into evidence, and the trial court heard no testimony that the lease agreements were ever fully executed.

¶ 34     Based on this extensive record support, we perceive no error in the trial court's determination that Brennan's failure to provide fully executed lease agreements for the billboards was not a breach of the contract or an excuse for Elite's belated effort to extend the contract closing date.  *See Gravina Siding & Windows Co. v. Gravina,* 2022 COA 50, ¶ 14 ("Whether a party has materially breached a contract is a question of fact, and a court's

determination of such a question may not be disturbed on appeal unless it is so clearly erroneous as to find no support in the record.") (citation omitted).

### 4. Certificates of Occupancy

¶ 35 Section 5(A)(6) of the PSA required Brennan to deliver to Elite fifteen categories of documents related to the property. Among those deliverables were "copies to all certificates of occupancy (COs) issued by governmental authorities for use or occupancy of the property." Elite argues that Brennan materially breached this provision because it provided only one CO, when the public record suggested that more than one existed. Brennan denies breaching this delivery obligation and asserts that Elite waived any objection to this requirement.

¶ 36 The trial court found that Brennan provided Elite the only CO in its possession more than six months before the closing date. The court also found that, in response to Elite's initial objection, Dan Brennan contacted the county to secure copies of other COs but was unsuccessful. Brennan provided that information to Elite. Calvin subsequently sent Brennan's attorney an email stating that

he "called Weld County" and "they were able to give [him] what [he] needed" for additional COs.

¶ 37    Based on this evidence, the trial court concluded that Brennan substantially performed its obligation with respect to delivery of the COs. The court also found that Brennan's inability to provide any additional COs was not material to Elite's failure to close. Finally, the court found that Elite, through its affirmative representation to Brennan that the County had provided what Elite needed with respect to the COs, waived any objection it may have once had with respect to the CO issues.

¶ 38    Because these facts are supported by the record, we discern no error in the trial court's finding that Brennan fulfilled its delivery obligation with respect to the COs. We also discern no error in the court's conclusion that if there ever was any basis for claiming Brennan did not fulfill its obligations concerning the COs, any such claim was waived by Elite's affirmative representation that it had what it needed. *See, e.g.*, *Richmond v. Grabowski*, 781 P.2d 192, 194 (Colo. App. 1989) ("In contract, waiver as a matter of law may occur when the contract establishes that an obligation by one party is a condition precedent to that of the other, and it is undisputed

that the latter has proceeded in spite of the former's failure to fulfill the condition.").

## 5.    The Easement

¶ 39    At trial, Elite raised various arguments with respect to the alternative access easement and whether the original legal description in the PSA was ever properly amended. Elite argues these issues provided additional grounds for extending the closing date indefinitely. The trial court rejected these arguments for various reasons.

¶ 40    On appeal, Elite argues in its opening brief that Brennan failed to perform because Brennan renegotiated to relocate the access easement to a different area on the property and conveyed the former access easement to a third party. Based on those events, Elite argued that Brennan no longer had the legal authority to sell the property as defined under the PSA (which encompassed the original easement and was not amended to include the renegotiated easement). Elite's argument on appeal is contained in one paragraph near the end of its opening brief.

¶ 41    Elite's opening brief provided no legal authority or explanation of how this asserted omission materially impacted its ability to close

the purchase. Moreover, while attempting to discount the trial court's added factual findings regarding the access easement, Elite's reply brief affirmatively represents that it "has not raised the access easement as an issue" on appeal. Since we do not review issues that are not raised on appeal or otherwise fully developed, we do not address this issue further. *See, e.g., Woodbridge Condo. Ass'n v. Lo Viento Blanco, LLC*, 2020 COA 34, ¶ 41 n.12 ("We don't consider undeveloped and unsupported arguments."), *aff'd*, 2021 CO 56.

### C. Specific Performance and Affirmative Defenses

#### 1. Specific Performance

¶ 42 Specific performance is a remedy potentially available when there has been a material breach of a contract. *Air Sols., Inc. v. Spivey*, 2023 COA 14, ¶ 48. The remedy is in lieu of a damage award and is intended to place the parties in the position they would have occupied if the contract had been fully performed. *Id.* But specific performance is not an available remedy when there has not been a material breach by the defending party. As discussed above, we find no error in the trial court's determination that Brennan did not breach the PSA. Therefore, there is no basis for a remedy, including specific performance.

## 2. Brennan's Affirmative Defenses

¶ 43 An affirmative defense is "not merely a denial of an element of a plaintiff's claim, but rather it is a legal argument that a defendant may assert to require the dismissal of a claim, notwithstanding the plaintiff's ability to prove the elements of that claim." *Soicher v. State Farm Mut. Auto. Ins. Co.*, 2015 COA 46, ¶ 18. Thus, if all the elements of a claim have not been proved, there is no need to consider an affirmative defense. *See State Farm Mut. Auto. Ins. Co. v. Goddard*, 2021 COA 15, ¶ 60.

¶ 44 Because the trial court did not err by finding and concluding that Brennan did not breach the PSA, we need not consider Elite's affirmative defenses.

## D. Attorney Fees

¶ 45 If attorney fees are recoverable for an appeal, the principal brief of the party claiming attorney fees must include a specific request, and explain the legal and factual basis, for an award of attorney fees. C.A.R. 39.1.

¶ 46 Because Brennan is the prevailing party, it is entitled to recover its attorney fees and related costs incurred on appeal pursuant to the fee-shifting provision in the PSA. We reject Elite's

request for attorney fees both because it was asserted for the first time in its reply brief and because it is not the prevailing party on appeal. *Pinnacol Assurance v. Laughlin*, 2023 COA 9, ¶ 22 ("[T]he issue was raised for the first time in her reply brief, so it is not properly before us."); *see* C.A.R. 39. Because the trial court is uniquely suited to undertake the fact finding necessary to determine such an award, we exercise our discretion under C.A.R. 39.1 and C.A.R. 39(c)(1) and remand to the trial court to determine and award Brennan its reasonable appellate attorney fees and related costs.

## III. Disposition

¶ 47    The judgment is affirmed, and the case is remanded to the trial court to determine Brennan's reasonable appellate attorney fees and related costs.

JUDGE TOW and JUDGE PAWAR concur.